# EXHIBIT A

NYSCEF

New York County Supreme Court

**Document List**

**Index #   152605/2025**

Created on:03/13/2025 03:43 PM

Case Caption:   **JANE DOE 1 v. ALON ALEXANDER et al**

Judge Name:   **Leslie Stroth**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS + COMPLAINT *Corrected* | Processed | 02/28/2025 | Feden, K. |
| 2 | ORDER TO SHOW CAUSE - ACCOMPANYING COMMENCEMENT DOC(S) (PROPOSED) (Motion #001)  *Corrected* | Processed | 02/28/2025 | Feden, K. |
| 3 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF PROPOSED OSC/EXPARTE APP | Processed | 02/25/2025 | Feden, K. |
| 4 | EXHIBIT(S) - A<br>Complaint | Processed | 02/25/2025 | Feden, K. |
| 5 | EXHIBIT(S) - B<br>Plaintiff Affidavit | Processed | 02/25/2025 | Feden, K. |
| 6 | RJI -RE: ORDER TO SHOW CAUSE | Processed | 02/25/2025 | Feden, K. |
| 7 | ORDER TO SHOW CAUSE (Motion #001) | Processed | 03/04/2025 | Court User |
| 8 | AFFIRMATION | Processed | 03/06/2025 | Feden, K. |
| 9 | EXHIBIT(S) - 1<br>Complaint | Processed | 03/06/2025 | Feden, K. |
| 10 | EXHIBIT(S) - 2<br>Affidavit of Attempted Service | Processed | 03/06/2025 | Feden, K. |
| 11 | EXHIBIT(S) - 3<br>Correspondence with Opposing Counsel | Processed | 03/06/2025 | Feden, K. |
| 12 | EXHIBIT(S) - 4<br>Correspondence with Opposing Counsel | Processed | 03/06/2025 | Feden, K. |

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 3 of 293

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X

JANE DOE 1,

                          Plaintiff,

         v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                          Defendant.

-----------------------------------------------------------------------X

**E-FILED SUMMONS**

Plaintiff designates New York County as the place of trial.

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

To the above-named Defendant:

     You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

                                    _Kristen Feden_

                                  **ANAPOL WEISS**
                                  Kristen Feden (5905328)
                                  One Logan Square
                                  130 North 18th Street, Suite 1600
                                  Philadelphia, PA 19103
                                  Telephone: (215) 608-9645
                                  Facsimile: (215) 735-2211
                                  kfeden@anapolweiss.com

                                  Alexandra Walsh (*pro hac vice* forthcoming)
                                  14 Ridge Square, NW, Suite 328
                                  Washington, DC 20016
                                  awalsh@anapolweiss.com

1

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 4 of 293

202-780-3014

TO:   ALON ALEXANDER
      c/o Metropolitan Detention Center
      80 29th Street
      Brooklyn, NY 11232

      OREN ALEXANDER
      c/o Metropolitan Detention Center
      80 29th Street
      Brooklyn, NY 11232

      TAL ALEXANDER
      c/o Metropolitan Detention Center
      80 29th Street
      Brooklyn, NY 11232

2

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II. PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III. JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV. FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 8 of 293

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.

 

16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 9 of 293

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence Protection Law,**

**N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a.  Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b.  From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c.  Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d.   Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

PRESENT:

Hon. _____

J.S.C.

At an IAS Part ___ of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the ___ day of _____ , 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X

JANE DOE 1,

                Plaintiff,

     -against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

              Defendant(s).

---------------------------------------------------------------X

Index No.:

**ORDER TO SHOW CAUSE**

Upon reading the Summons with Notice in this action, dated _____ , 2025; the Affidavit of _JANE DOE 1_ dated February 21, 2024; memorandum of law in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the Plaintiff SHOW CAUSE at I.A.S. Part _____, Room _____ of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the _____ day of _____ , 2025, at _____, or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

ORDERED that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

----------------------------------------------------------------X

JANE DOE 1,

                       Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

                       Defendant(s).

----------------------------------------------------------------X

and it is further

ORDERED that, pending the hearing of this motion BERFORE THE JUSTICE TO BE ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL

ALEXANDER".

ORDERED that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon

_____ on or before _____ day

of _____ , 20 _____ .

ENTER:

_____

Justice of the Supreme Court

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 23 of 293

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------X

JANE DOE 1,

               Plaintiff,

    -against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

               Defendant(s).

---------------------------------------------------------------------------X

**AFFIRMATION OF
KRISTEN FEDEN
AND ALEXANDRA
WALSH IN
SUPPORT OF
PLAINTIFF'S
ORDER TO SHOW
CAUSE**

Index No.:

### AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER

**KRISTEN FEDEN**, attorney duly admitted to practice in the Courts of the State of New York,

**ALEXANDRA WALSH**, *pro hac vice* forthcoming, attorneys for Plaintiff in the within action,

hereby affirm under penalty of perjury as follows:

1. I am fully familiar with the above-captioned matter and the proceedings had herein by

    virtue of the file maintained in our office.

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 24 of 293

2. This affirmation is submitted in support of Plaintiff's application for an order allowing her to proceed under, and be referred to in all papers, by the pseudonym listed in the caption of this matter.

3. Plaintiff is an adult female who was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter referred to as, "Defendants" or "Alexander Brothers"), at Defendants' apartment in the SoHo neighborhood of Manhattan. Due to the extraordinarily sensitive and intimate nature of the allegations, disclosure of Plaintiff's identity would cause her to suffer significant additional psychological harm, potentially re-traumatize her, and subject her to public scrutiny and stigmatization that survivors of sexual violence should not be forced to endure.

4. As more fully described in Plaintiff's Complaint, Defendants orchestrated, enabled, and directly participated in the sexual assault to varying degrees through a pattern of predatory behavior. The Complaint outlines how the Defendants used their prominent social standing, influence, and resources to lure Plaintiff into a location where she was vulnerable and isolated, creating circumstances designed to facilitate their alleged criminal acts while minimizing the risk of intervention or resistance from the victim. Plaintiff's Complaint is attached hereto as Exhibit "A".

5. Over the course of more than a decade, Defendants sexually preyed upon *dozens* of women,[1] including Plaintiff, through deliberately calculated, planned, and coordinated

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-

sexual assaults, including, but not limited to, administering intoxicating substances to render victims incapacitated and prevent them from effectively resisting; committing acts of vaginal and oral rape; and subjecting victims to sexual assault by multiple perpetrators simultaneously. This pattern of predatory misconduct was designed to exploit vulnerabilities, prevent victims from reporting, and shield Defendants from accountability for their actions.

6. Sadly, Plaintiff is one of many survivors of the Alexander Brothers' reign of sexual terror and she currently seeks damages for the physical, psychological and emotional injuries she sustained as a result of said sexual assault.

7. As such, Plaintiff seeks to prosecute her claims without publicly disclosing her identity as a victim of sexual assault because this matter is of a highly sensitive nature, she has already experienced significant pain, shock, shame and embarrassment due to the impact that the sexual assault caused, it poses the risk of retaliatory harm to her and it is the type of matter that has garnered significant attention.

8. Given the high-profile nature of this case, the significant media attention it has garnered, the Defendants' prominence in the real estate industry, and the sensitive nature of the alleged sexual violence, Plaintiff faces extraordinary risks of further trauma, public stigmatization, professional retaliation, and personal safety concerns should her identity be revealed. The protection of anonymity is essential to Plaintiff's ability to pursue justice while preserving her dignity, privacy, and psychological well-being.

---

00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; Id. at 3; Id. at 2; Id. at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

9. New York courts have consistently protected the privacy interests of individuals in cases involving sexual assault, sexual harassment, and substance use disorders. This judicial recognition reflects the substantial privacy interests at stake in such sensitive proceedings, where public disclosure could result in significant psychological harm and social stigmatization. In alignment with these principles, Civil Rights Law § 50-b explicitly provides a limited right of privacy, permitting plaintiff anonymity "where a substantial privacy interest is involved." *See Doe v. New York Univ.*, 6 Misc. 3d 866, 880 (Sup. Ct. 2004) (citation omitted).

10. In *Doe*, Hon. Carol R. Edmead, J.S.C., definitively articulated New York State's established policy position on pseudonymity in sensitive proceedings, authoritatively stating:

> It has been noted that: Upon approving the above legislation, on July 1, 1991, the New York Governor, Mario M. Cuomo, stated in his Governor's Memorandum, as follows:
>
> *. . . [S]exual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.*
>
> *The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public.* Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor's Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. *Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.*
>
> Media accounts of sexual offenses, including reports of the victim's identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, *it will be an important safeguard for the privacy of sexual offense victims.*

*Id.* (citing *Deborah S. v. Diorio*, 153 Misc. 2d 708, 718-719 (Civ. Ct. 1992)) (emphasis added).

11. The Second Circuit has established a comprehensive analytical framework for determining when a plaintiff may proceed under pseudonym. As articulated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), courts must evaluate multiple factors, including: "(1) whether the litigation involves matters that are highly sensitive and of personal nature; (2) whether identification will pose a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether the identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether a plaintiff is particularly vulnerable to possible harms of disclosure . . .; (6) whether a defendant will be prejudiced by allowing a plaintiff to press claims anonymously; (7) whether the plaintiff's identity has thus far been kept confidential; . . ." (internal quotations and citations omitted).

12. A thorough application of these factors to the present case overwhelmingly supports Plaintiff's request to proceed under pseudonym: (1) Plaintiff is a survivor of sexual violence, perpetrated through surreptitiously administered intoxicants—matters of the most intimate and sensitive personal nature recognized by courts as warranting privacy protection; (2) Plaintiff faces substantial risk of retaliation and harm beyond mere embarrassment. Sexual assault survivors routinely face skepticism, victim-blaming, and social ostracism. Public identification would expose Plaintiff to potential harassment, professional retaliation, and severe psychological distress; (3) Defendants sexually preyed on Plaintiff leveraging their substantial wealth, social prominence, and industry connections—resources they still possess—to facilitate their predatory misconduct. Public

disclosure would compound Plaintiff's emotional trauma and potentially impair her professional standing and economic opportunities; (4) As a professional whose career depends on reputation and credibility, Plaintiff is particularly vulnerable to the devastating consequences of public identification in connection with these allegations; (6) Defendants will not be prejudiced nor will they gain anything from Plaintiff's public exposure, because Plaintiff will provide her identity and all other relevant identifying information to Defendants and their attorneys in accord with any Case Management Order, and thus, they will be able to investigate and defend against the claims through the standard means of discovery; (7) Plaintiff's identity has thus far been kept confidential.

13. The compelling weight of these factors strongly favors permitting Plaintiff to proceed under pseudonym, particularly given the extraordinary sensitivity of the allegations and the absence of any demonstrable prejudice to Defendants. *See* Exhibit "B", a true and correct copy of Plaintiff's Affidavit which provides compelling evidence of the severe psychological, professional, and social harms she would suffer if forced to publicly identify herself in this high-profile litigation.

14. Furthermore, in weighing Plaintiff's compelling privacy interests against Defendants' constitutional Due Process rights, this Court can find direct and controlling precedent in the authoritative decision of Justice George J. Silver, who unequivocally held that:

> [T]he right of the public, and the press, to access judicial proceedings is not absolute or unfettered, and involves judicial discretion (Lerner, 124 A.D.3d at 487, *supra*). Moreover, access may still be restricted in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual (*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 [1982]).

*See ARK61 DOE v. Archdiocese of New York*, 2019 N.Y. Misc. LEXIS 6035, *4 (Sup. Ct. 2019).

15. Critically, permitting Plaintiff to proceed under pseudonym will in no way impair the public's legitimate interest in open judicial proceedings. Plaintiff seeks *only* to shield her identity—not to seal court records or conceal the underlying facts of this action. This narrowly tailored request maintains public access to the substance of the allegations while protecting Plaintiff from the severe and lasting harm that would result from public identification. As verified in Plaintiff's Affidavit (attached hereto as Exhibit "B"), this balanced approach preserves both judicial transparency and Plaintiff's essential privacy interests. (Plaintiff's Complaint is attached hereto as Exhibit "A").

16. Justice Silver's decision in *ARK61 DOE*, provides direct guidance on balancing privacy interests against the public's right to information in cases involving private defendants:

> . . . it is axiomatic that plaintiff should be afforded the protection of anonymity. To be sure, the instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. **The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress**. . . .

See *ARK61 DOE*, 2019 N.Y. Misc. LEXIS at *6 (emphasis added).

This judicial recognition is firmly grounded in established precedent, as courts have consistently held that "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

17. The extraordinary media attention this case has already generated compounds the necessity for pseudonymous proceedings. Denying Plaintiff's request would not only subject her to intensified media scrutiny but would also create a profound chilling effect, deterring other survivors of sexual violence from pursuing judicial remedies. Such an outcome directly

contravenes New York's established public policy of encouraging victims to seek redress without fear of public exposure.

18. Accordingly, given New York courts' well-established practice of permitting sexual offense victims to proceed anonymously and the State's explicit policy protecting the confidentiality of sexual assault victims, Plaintiff respectfully requests permission to proceed under the "Jane Doe" pseudonym throughout this litigation.

19. Plaintiff further requests that this Court issue a temporary restraining order prohibiting Defendants from disclosing her name or other identifying personal information to any members of the public. Such an order is not merely appropriate but legally mandated, as N.Y. Civil Rights Law § 50-b explicitly guarantees sexual assault victims the right to protection from personal identification. Denying Plaintiff's request would therefore constitute a direct violation of this statutory protection.

20. No previous application has been made for the relief requested herein.

**WHEREFORE**, it is respectfully requested that Plaintiff's Order to Show Cause be granted in its entirety, together with such other relief as this Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328) [2]
One Logan Square
130 North 18th Street, Suite 1600

---

[2] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 2080 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_

**ANAPOL WEISS**
Kristen Feden (5905328) [3]
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

---

[3] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 33 of 293

# Exhibit A

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 33 of 293

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II. PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III. JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV. FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.




16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.     PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

   a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

   b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

   c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d.   Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 48 of 293

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

JANE DOE 1,

           Plaintiff,

   -against-


ALEXANDER, et al.


          Defendant(s).

------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S REQUEST TO PROCEED AS A PSEUDONYM**

Index No.:

I, the Plaintiff in this matter proceeding under a pseudonym, state as follows:

1. I am a competent adult over 18 years of age able to testify as to personal knowledge.

2. The facts in this declaration are true and correct to the best of my knowledge, information, and belief.

3. I am competent to testify to them if called upon to do so.

4. I was subjected to sexual and physical as more fully described in my Complaint (attached to herein petition as Exhibit "B").

5. All averments contained in the Complaint pertaining to me are true and correct to the best of my knowledge, information, and belief.

6. Unquestionably, this litigation involves matters that are highly sensitive and of a personal nature.

7. I believe that identification of me would cause me great emotional stress, harm, trauma, revictimization, ridicule, retaliation, other emotional harm, and/or embarrassment. I would not want the public, my employers or family to know what happened to me.

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 50 of 293

8. Identification of me could also potentially cause me to reconsider litigation of this matter. I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/21/2025

Signature: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Print Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:40 PM
INDEX NO. 152605/2025
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 02/25/2025

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 51 of 293



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

## Supreme COURT, COUNTY OF New York

Index No: _____   Date Index Issued: _____

| | For Court Use Only: |
|---|---|

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

JANE DOE 1

IAS Entry Date

Plaintiff(s)/Petitioner(s)

Judge Assigned

-against-

ALON ALEXANDER, OREN ALEXANDER, TAL ALEXANDER

RJI Filed Date

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:   Check only one box and specify where indicated.

### COMMERCIAL

- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (specify): _____

**NOTE:** For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.

### TORTS

- ☐ Asbestos
- ☐ Environmental (specify): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (specify): _____
- ☐ Other Negligence (specify): _____
- ☐ Other Professional Malpractice (specify): _____
- ☒ Other Tort (specify): Gender-Motivated Violence Act (GMVA)

### SPECIAL PROCEEDINGS

- ☐ Child-Parent Security Act (specify): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration   [see **NOTE** in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (specify): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (specify): _____
- ☐ Other Special Proceeding (specify): _____

### MATRIMONIAL

- ☐ Contested

  **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.

  For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.

### REAL PROPERTY   Specify how many properties the application includes: _____

- ☐ Condemnation
- ☐ Mortgage Foreclosure (specify): ☐ Residential   ☐ Commercial

  Property Address: _____

  **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.

- ☐ Partition

  **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.

- ☐ Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (specify): _____

### OTHER MATTERS

- ☐ Certificate of Incorporation/Dissolution   [see **NOTE** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (specify): _____

## STATUS OF ACTION OR PROCEEDING   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☐ Notice of Motion   Relief Requested: _____   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☒ Order to Show Cause   Relief Requested: Miscellaneous   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other (specify): _____

**RELATED CASES** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**PARTIES** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties — List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants — For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined — For each defendant, indicate if issue has been joined. | Insurance Carriers — For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: JANE DOE 1<br><br>Role(s): Plaintiff/Petitioner | KRISTEN FEDEN, ANAPOL WEISS, 130 N. 18TH STREET, SUITE 1600 , PHILADELPHIA, PA  19103, 215-735-1130, kfeden@anapolweiss.com | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, ALON<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, OREN<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, TAL<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:  02/25/2025

KRISTEN M. FEDEN
Signature

5905328
Attorney Registration Number

KRISTEN M. FEDEN
Print Name

*This form was generated by NYSCEF*

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 53 of 293

LEXITAS

PRESENT: Hon. __HON. LESLIE A. STROTH__
J.S.C.

At an IAS Part 12 of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the 3 day of _____March_____, 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

JANE DOE 1,

Plaintiff,

Index No.: 152605/2025

**ORDER TO SHOW CAUSE**

-against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

Defendant(s).

-----------------------------------------------------------------X

Upon reading the Summons with Notice in this action, dated __Feb 25th__, 2025; the Affidavit of __JANE DOE 1__ dated February 21, 2024; ~~memorandum of law~~ in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the ~~Plaintiff~~ Defendant SHOW CAUSE at I.A.S. Part 12, Room 328 of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the 8th day of _____May_____, 2025, at 11:30 a, or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 54 of 293

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

**ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-----------------------------------------------------------------X

JANE DOE 1,

                     Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

                     Defendant(s).

-----------------------------------------------------------------X

and it is further

~~ORDERED~~ that, pending the hearing of this motion ~~BERFORE THE JUSTICE TO BE~~ ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE ~~DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL~~

ALEXANDER".

**ORDERED** that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon _____ defendents _____ on or before ___6th___ day of ___March___, 20 25 .

Opposition due by 4/14/25

ENTER:

Dated 3/3/25

SO ORDERED

HON. LESLIE A. STROTH, J.S.C.

Justice of the Supreme Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X    Index No.: 152605/2025

JANE DOE 1,

**AFFIRMATION**

Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND TAL
ALEXANDER

Defendants.

-------------------------------------------------------------------X

In accordance with CPLR § 2106, Kristen Feden, an attorney admitted to practice law in the Courts of the State of New York and senior trial counsel of Anapol Weiss, attorneys for the Plaintiff, affirms the following to be true under the penalties of perjury:

1. I am fully familiar with all of the facts and circumstances of this action based upon my review of the case file maintained by my firm.

2. This affirmation is submitted in support of Plaintiff's application for additional time to serve defendants Alon Alexander, Oren Alexander, and Tal Alexander with the Order to Show Cause to appear before this court on May 8, 2025, at 11:30 am to address granting of a temporary restraining order, permitting Plaintiff to proceed in this action under pseudonym, directing all parties to refrain from publishing Plaintiff's true identity, and directing all court documents to refer to Plaintiff by the pseudonym "Jane Doe 1"

3. Plaintiff, an adult female, was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter, "Defendants") at their SoHo apartment in Manhattan. Due to the severe trauma inflicted by the Defendants, Plaintiff initiated legal action by filing a

1

Complaint against them on February 25, 2025. *See* Plaintiff's Complaint, attached hereto as Exhibit 1.

4. As detailed in Plaintiff's Complaint, Defendants engaged in a calculated pattern of predatory behavior, using their social standing, influence, and resources to lure victims into isolated situations where they could perpetrate sexual violence. Their misconduct spanned more than a decade, involving numerous victims, whom they exploited through coercion, incapacitation, and coordinated assaults to evade accountability.[1]

5. Plaintiff, like many others, suffered severe physical, psychological, and emotional harm as a result of Defendants' actions. She now seeks damages for these injuries while maintaining her privacy due to the deeply traumatic nature of the assault, the risk of retaliation, and the significant public attention surrounding this case. Notably, Defendants are currently incarcerated[2] at Metropolitan Detention Center ("MDC") Brooklyn, facing criminal charges for the same conduct perpetrated against Plaintiff.

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; *Id.* at 3; *Id.* at 2; *Id.* at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[2] Superseding Indictment, *U.S. v. Alexander et al.*, 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

6. As a result of Defendants' incarceration, service must be effectuated by the Office of the Sherriff.

7. On March 4, 2025, at 4:39 pm, the New York County Clerk filed the Plaintiff's Order to Show Cause signed by the Court and directed it to be served upon Defendants Alon Alexander, Oren Alexander, and Tal Alexander via CPLR § 308(1) by March 6, 2025.

8. On March 4, 2025, staff at Anapol Weiss coordinated with the Kings County Office of the Sheriff, located at 345 Adams Street, 5th Floor, Brooklyn, NY 11201, to effectuate service of process upon Defendants Alon Alexander, Oren Alexander, and Tal Alexander, who are currently housed at MDC Brooklyn, located at 80 29th Street, Brooklyn, NY 11232. Pursuant to the instructions provided by the Office of the Sheriff, our office delivered the necessary documents via overnight FedEx, accompanied by the required payment. *See* Notarized Affidavit of Martin Palomo, attached as Exhibit 2.

9. On March 6, 2025, counsel for Plaintiff, Jane Doe 1, sent a copy of the Summons and Complaint, Order to Show Cause signed by the Judge, Affidavit in Support of the Proposed Order to Show Cause, and the Request for Judicial Intervention ("RJI") – Re: Order to Show Cause to attorneys Isabelle A. Kirshner, Esquire, Brian David Linder, Esquire, and Effie Blassberger, Esquire, of Clayman Rosenberg Kirshner & Linder, LLP. While they have not indicated that they represent Defendants Alon Alexander and Oren Alexander in this action, they previously represented them in a similar matter docketed as 24-cv-4813 in the Southern District of New York. Accordingly, these documents were provided as a courtesy. *See* attached correspondence with counsel of Clayman Rosenberg Kirshner & Linder, LLP as Exhibit 3.

3

10. On March 6, 2025, counsel for Plaintiff, Jane Doe 1, sent a copy of the Summons and Complaint, Order to Show Cause signed by the Judge, Affidavit in Support of the Proposed Order to Show Cause, and the RJI – Re: Order to Show Cause to attorneys Deanna Paul, Esquire, and Milton L. Williams, Esquire, of Walden Macht Haran & Williams, LLP. While they have not indicated that they represent Defendant Tal Alexander in this action, they previously represented him in a similar matter docketed as 24-cv-4813 in the Southern District of New York. Accordingly, these documents were provided as a courtesy. *See* attached correspondence with counsel of Walden Macht Haran, & Williams, LLP as Exhibit 4.

11. The Office of the Sheriff is currently attempting to serve the defendants at 345 Adams Street, 5th Floor Brooklyn, NY 11201. Due to the short notice period of the order to show cause to appear before this court and given that only the Sheriff's Office can serve the defendant at MDC Brooklyn, the Office of the Sheriff requires additional time to serve the defendants.

12. The Plaintiff respectfully requests additional time to serve Defendants Alon Alexander, Oren Alexander, and Tal Alexander with the Order to Show Cause dated March 4, 2025, and would beg the Court to permit service via CPLR § 308(2) due to possible delays.

Dated: March 6, 2025

*Kristen Feden*

KRISTEN FEDEN
ANAPOL WEISS
130 N 18th St #1600,
Philadelphia, PA 19103

4

215-383-2753

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 1014 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: March 6, 2025

Respectfully Submitted,

By:

KRISTEN FEDEN
ANAPOL WEISS
130 N 18th St #1600,
Philadelphia, PA 19103
215-383-2753

5

# Exhibit 1

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 63 of 293

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X

JANE DOE 1,

                              Plaintiff,

               v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                             Defendant.

-----------------------------------------------------------------------X

**E-FILED SUMMONS**

Plaintiff designates New York County as the place of trial.

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

To the above-named Defendant:

      You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

_Kristen Feden_
_____
**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com

202-780-3014

TO:   ALON ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

OREN ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

TAL ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

2

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.     PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.     JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.     FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.




16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 74 of 293

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence Protection Law,**

**N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

   a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

   b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

   c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance—by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d.   Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By:_____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

# Exhibit 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X    Index No.: 152605/2025
JANE DOE 1,

                          **AFFIRMATION**

                     Plaintiff,

       -against-

ALON ALEXANDER, OREN ALEXANDER, AND TAL
ALEXANDER

                    Defendants.

------------------------------------------------------------------------X

**AFFIDAVIT OF MARTIN PALOMO PURSUANT TO N.Y.CT.RULES § 202.46**

I, Martin Palomo, paralegal for Kristen Feden, Esq., a Managing Shareholder at Anapol Weiss, affirms the following to be true under the penalties of perjury:

1. On March 4, 2025, I mailed the Summons & Complaint, Signed Order to Show Cause, Affidavit in Support of Proposed Order to Show Cause, Exhibit A, Exhibit B, and RJI – Re: Order to Show cause, attached to this affidavit to the Kings County Office of the Sheriff via FedEx Priority Overnight Mail to 345 Adams Street, 5th Floor Brooklyn, NY 11201 to serve defendants Tal Alexander, Alon Alexander, and Oren Alexander who currently reside in MDC Brooklyn at 80 29th Street Brooklyn, NY 11232.

2. The filed documents sent to the Kings County Office of the Sheriff to serve Defendants Tal Alexander is attached hereto as **Exhibit "A."**

3. The aforementioned correspondence is attached hereto as **Exhibits "B."**

4. The FedEx Priority Overnight Mail Receipt making clear the Kings County Office of the Sheriff was given immediate notice to properly serve the Defendant is attached hereto as **Exhibit "C."**

I declare under penalty of perjury that the foregoing is true and correct.

Date: _3/5/2025_____

Signature: _____

Martin Palomo

Sworn to before me this

_5th___ day of ____March_____, 20_25_

_____

NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
AMANDA LYNN WEISBACH, Notary Public
Philadelphia County
My Commission Expires Sep 12, 2025
Commission Number 1320336

Notarial Act Performed by Audio visual communication

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------X

JANE DOE 1,

                                 Plaintiff,

            v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                                Defendant.

-----------------------------------------------------------------------X

**E-FILED SUMMONS**

Plaintiff designates New York County as the place of trial.

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

To the above-named Defendant:

        You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

_____
**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com

1

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 84 of 293

202-780-3014

TO:    ALON ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

OREN ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

TAL ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

2



KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 86 of 293

## I.   INTRODUCTION

1.   For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.   Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.   The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.   The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II. PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III. JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV. FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship. The below depicts the conversation between Alon and Plaintiff's friend.

 

16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g.  Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h.  Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i.  Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

## FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By:_____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ]
ALEXANDER

LEXITAS

PRESENT: HON. LESLIE A. STROTH

Hon. _____
J.S.C.

At an IAS Part 12 of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the 3 day of _____March_____ , 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------X

JANE DOE 1,

          Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

          Defendant(s).

--------------------------------------------------------------X

Index No.: 152605/2025

**ORDER TO SHOW CAUSE**

Upon reading the Summons with Notice in this action, dated **Feb 25th**, 2025; the Affidavit of _JANE DOE 1_ dated February 21, 2024; ~~memorandum of law~~ in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the ~~Plaintiff~~ Defendant SHOW CAUSE at I.A.S. Part 12, Room 328 of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the 8th day of _____May_____, 2025, at 11:30 a, or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

**ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

---------------------------------------------------------------------X

JANE DOE 1,

                Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

                Defendant(s).

---------------------------------------------------------------------X

and it is further

- ~~ORDERED that, pending the hearing of this motion BERFORE THE JUSTICE TO BE~~ ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE ~~DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL~~

3 of 4

ALEXANDER".

**ORDERED** that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon _____defendents_____ on or before ___6th___ day of ____March____, 20 25 .

Opposition due by 4/14/25

ENTER:                                    Dated 5/3/25

SO ORDERED

HON. LESLIE A. STROTH, J.S.C.

Justice of the Supreme Court

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------X

JANE DOE 1,

               Plaintiff,

   -against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

               Defendant(s).

---------------------------------------------------------------------------X

                                         **AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE**

                                           Index No.:

**AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF
PLAINTIFF'S ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING
ORDER**

**KRISTEN FEDEN**, attorney duly admitted to practice in the Courts of the State of New York,

**ALEXANDRA WALSH**, *pro hac vice* forthcoming, attorneys for Plaintiff in the within action,

hereby affirm under penalty of perjury as follows:

1. I am fully familiar with the above-captioned matter and the proceedings had herein by

    virtue of the file maintained in our office.

2. This affirmation is submitted in support of Plaintiff's application for an order allowing her to proceed under, and be referred to in all papers, by the pseudonym listed in the caption of this matter.

3. Plaintiff is an adult female who was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter referred to as, "Defendants" or "Alexander Brothers"), at Defendants' apartment in the SoHo neighborhood of Manhattan. Due to the extraordinarily sensitive and intimate nature of the allegations, disclosure of Plaintiff's identity would cause her to suffer significant additional psychological harm, potentially re-traumatize her, and subject her to public scrutiny and stigmatization that survivors of sexual violence should not be forced to endure.

4. As more fully described in Plaintiff's Complaint, Defendants orchestrated, enabled, and directly participated in the sexual assault to varying degrees through a pattern of predatory behavior. The Complaint outlines how the Defendants used their prominent social standing, influence, and resources to lure Plaintiff into a location where she was vulnerable and isolated, creating circumstances designed to facilitate their alleged criminal acts while minimizing the risk of intervention or resistance from the victim. Plaintiff's Complaint is attached hereto as Exhibit "A".

5. Over the course of more than a decade, Defendants sexually preyed upon ***dozens*** of women,[1] including Plaintiff, through deliberately calculated, planned, and coordinated

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-

sexual assaults, including, but not limited to, administering intoxicating substances to render victims incapacitated and prevent them from effectively resisting; committing acts of vaginal and oral rape; and subjecting victims to sexual assault by multiple perpetrators simultaneously. This pattern of predatory misconduct was designed to exploit vulnerabilities, prevent victims from reporting, and shield Defendants from accountability for their actions.

6. Sadly, Plaintiff is one of many survivors of the Alexander Brothers' reign of sexual terror and she currently seeks damages for the physical, psychological and emotional injuries she sustained as a result of said sexual assault.

7. As such, Plaintiff seeks to prosecute her claims without publicly disclosing her identity as a victim of sexual assault because this matter is of a highly sensitive nature, she has already experienced significant pain, shock, shame and embarrassment due to the impact that the sexual assault caused, it poses the risk of retaliatory harm to her and it is the type of matter that has garnered significant attention.

8. Given the high-profile nature of this case, the significant media attention it has garnered, the Defendants' prominence in the real estate industry, and the sensitive nature of the alleged sexual violence, Plaintiff faces extraordinary risks of further trauma, public stigmatization, professional retaliation, and personal safety concerns should her identity be revealed. The protection of anonymity is essential to Plaintiff's ability to pursue justice while preserving her dignity, privacy, and psychological well-being.

---

00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; Id. at 3; Id. at 2; Id. at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

9. New York courts have consistently protected the privacy interests of individuals in cases involving sexual assault, sexual harassment, and substance use disorders. This judicial recognition reflects the substantial privacy interests at stake in such sensitive proceedings, where public disclosure could result in significant psychological harm and social stigmatization. In alignment with these principles, Civil Rights Law § 50-b explicitly provides a limited right of privacy, permitting plaintiff anonymity "where a substantial privacy interest is involved." *See Doe v. New York Univ.*, 6 Misc. 3d 866, 880 (Sup. Ct. 2004) (citation omitted).

10. In *Doe*, Hon. Carol R. Edmead, J.S.C., definitively articulated New York State's established policy position on pseudonymity in sensitive proceedings, authoritatively stating:

> It has been noted that: Upon approving the above legislation, on July 1, 1991, the New York Governor, Mario M. Cuomo, stated in his Governor's Memorandum, as follows:
>
> *. . . [S]exual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.*
>
> *The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public.* Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor's Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. *Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.*
>
> Media accounts of sexual offenses, including reports of the victim's identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, *it will be an important safeguard for the privacy of sexual offense victims.*

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 107 of 293

*Id.* (citing *Deborah S. v. Diorio*, 153 Misc. 2d 708, 718-719 (Civ. Ct. 1992)) (emphasis added).

11. The Second Circuit has established a comprehensive analytical framework for determining when a plaintiff may proceed under pseudonym. As articulated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), courts must evaluate multiple factors, including: "(1) whether the litigation involves matters that are highly sensitive and of personal nature; (2) whether identification will pose a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether the identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether a plaintiff is particularly vulnerable to possible harms of disclosure . . .; (6) whether a defendant will be prejudiced by allowing a plaintiff to press claims anonymously; (7) whether the plaintiff's identity has thus far been kept confidential; . . ." (internal quotations and citations omitted).

12. A thorough application of these factors to the present case overwhelmingly supports Plaintiff's request to proceed under pseudonym: (1) Plaintiff is a survivor of sexual violence, perpetrated through surreptitiously administered intoxicants—matters of the most intimate and sensitive personal nature recognized by courts as warranting privacy protection; (2) Plaintiff faces substantial risk of retaliation and harm beyond mere embarrassment. Sexual assault survivors routinely face skepticism, victim-blaming, and social ostracism. Public identification would expose Plaintiff to potential harassment, professional retaliation, and severe psychological distress; (3) Defendants sexually preyed on Plaintiff leveraging their substantial wealth, social prominence, and industry connections—resources they still possess—to facilitate their predatory misconduct. Public

disclosure would compound Plaintiff's emotional trauma and potentially impair her professional standing and economic opportunities; (4) As a professional whose career depends on reputation and credibility, Plaintiff is particularly vulnerable to the devastating consequences of public identification in connection with these allegations; (6) Defendants will not be prejudiced nor will they gain anything from Plaintiff's public exposure, because Plaintiff will provide her identity and all other relevant identifying information to Defendants and their attorneys in accord with any Case Management Order, and thus, they will be able to investigate and defend against the claims through the standard means of discovery; (7) Plaintiff's identity has thus far been kept confidential.

13. The compelling weight of these factors strongly favors permitting Plaintiff to proceed under pseudonym, particularly given the extraordinary sensitivity of the allegations and the absence of any demonstrable prejudice to Defendants. *See* Exhibit "B", a true and correct copy of Plaintiff's Affidavit which provides compelling evidence of the severe psychological, professional, and social harms she would suffer if forced to publicly identify herself in this high-profile litigation.

14. Furthermore, in weighing Plaintiff's compelling privacy interests against Defendants' constitutional Due Process rights, this Court can find direct and controlling precedent in the authoritative decision of Justice George J. Silver, who unequivocally held that:

> [T]he right of the public, and the press, to access judicial proceedings is not absolute or unfettered, and involves judicial discretion (Lerner, 124 A.D.3d at 487, *supra*). Moreover, access may still be restricted in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual (*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 [1982]).

*See ARK61 DOE v. Archdiocese of New York*, 2019 N.Y. Misc. LEXIS 6035, *4 (Sup. Ct. 2019).

15. Critically, permitting Plaintiff to proceed under pseudonym will in no way impair the public's legitimate interest in open judicial proceedings. Plaintiff seeks *only* to shield her identity—not to seal court records or conceal the underlying facts of this action. This narrowly tailored request maintains public access to the substance of the allegations while protecting Plaintiff from the severe and lasting harm that would result from public identification. As verified in Plaintiff's Affidavit (attached hereto as Exhibit "B"), this balanced approach preserves both judicial transparency and Plaintiff's essential privacy interests. (Plaintiff's Complaint is attached hereto as Exhibit "A").

16. Justice Silver's decision in *ARK61 DOE*, provides direct guidance on balancing privacy interests against the public's right to information in cases involving private defendants:

> . . . it is axiomatic that plaintiff should be afforded the protection of anonymity. To be sure, the instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. **The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress**. . . .

See *ARK61 DOE*, 2019 N.Y. Misc. LEXIS at *6 (emphasis added).

This judicial recognition is firmly grounded in established precedent, as courts have consistently held that "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

17. The extraordinary media attention this case has already generated compounds the necessity for pseudonymous proceedings. Denying Plaintiff's request would not only subject her to intensified media scrutiny but would also create a profound chilling effect, deterring other survivors of sexual violence from pursuing judicial remedies. Such an outcome directly

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 110 of 293

contravenes New York's established public policy of encouraging victims to seek redress without fear of public exposure.

18. Accordingly, given New York courts' well-established practice of permitting sexual offense victims to proceed anonymously and the State's explicit policy protecting the confidentiality of sexual assault victims, Plaintiff respectfully requests permission to proceed under the "Jane Doe" pseudonym throughout this litigation.

19. Plaintiff further requests that this Court issue a temporary restraining order prohibiting Defendants from disclosing her name or other identifying personal information to any members of the public. Such an order is not merely appropriate but legally mandated, as N.Y. Civil Rights Law § 50-b explicitly guarantees sexual assault victims the right to protection from personal identification. Denying Plaintiff's request would therefore constitute a direct violation of this statutory protection.

20. No previous application has been made for the relief requested herein.

**WHEREFORE**, it is respectfully requested that Plaintiff's Order to Show Cause be granted in its entirety, together with such other relief as this Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_
**ANAPOL WEISS**
Kristen Feden (5905328) [2]
One Logan Square
130 North 18th Street, Suite 1600

---

[2] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 111 of 293

Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra   Walsh   (*pro   hac   vice*
forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 2080 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_____

**ANAPOL WEISS**
Kristen Feden (5905328) [3]
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

---

[3] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

# Exhibit A

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5.   Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6.   Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7.   Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8.   Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9.   Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.    JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.    FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.

 

16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

## FIRST CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence Protection Law,**

**N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:40 PM    INDEX NO. 152605/2025
NYSCEF DOC. NO. 4                                                   RECEIVED NYSCEF: 02/25/2025

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1.  Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

    a.  Medical expenses, past and future;

    b.  Impaired earning capacity;

    c.  Past and future emotional distress and psychological trauma;

    d.  Past and future loss of enjoyment of life;

2.  Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3.  Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4.  Award reasonable attorneys' fees and costs;

5.  For such other and further relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: *Kristen Feden*

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 127 of 293

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:40 PM
NYSCEF DOC. NO. 5
RECEIVED NYSCEF: 02/25/2025

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

JANE DOE 1,

               Plaintiff,

     -against-

ALEXANDER, et al.

               Defendant(s).

-------------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT**
**OF PLAINTIFF'S**
**REQUEST TO PROCEED**
**AS A PSEUDONYM**

Index No.:

I, the Plaintiff in this matter proceeding under a pseudonym, state as follows:

1. I am a competent adult over 18 years of age able to testify as to personal knowledge.

2. The facts in this declaration are true and correct to the best of my knowledge, information, and belief.

3. I am competent to testify to them if called upon to do so.

4. I was subjected to sexual and physical as more fully described in my Complaint (attached to herein petition as Exhibit "B").

5. All averments contained in the Complaint pertaining to me are true and correct to the best of my knowledge, information, and belief.

6. Unquestionably, this litigation involves matters that are highly sensitive and of a personal nature.

7. I believe that identification of me would cause me great emotional stress, harm, trauma, revictimization, ridicule, retaliation, other emotional harm, and/or embarrassment. I would not want the public, my employers or family to know what happened to me.

8. Identification of me could also potentially cause me to reconsider litigation of this matter. I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/21/2025

Signature: ▮▮▮▮▮▮▮▮▮▮

Print Name: ▮▮▮▮▮▮▮▮▮▮

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:40 PM
INDEX NO. 152605/2025
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 02/25/2025
Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 131 of 293



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

### Supreme COURT, COUNTY OF New York

Index No: _____     Date Index Issued: _____

| | **For Court Use Only:** |
|---|---|

**CAPTION**     Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

JANE DOE 1

Plaintiff(s)/Petitioner(s)

-against-

ALON ALEXANDER, OREN ALEXANDER, TAL ALEXANDER

Defendant(s)/Respondent(s)

**For Court Use Only:**

| | |
|---|---|
| IAS Entry Date | |
| Judge Assigned | |
| RJI Filed Date | |

---

## NATURE OF ACTION OR PROCEEDING:     Check only one box and specify where indicated.

### COMMERCIAL

- [ ] Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- [ ] Contract
- [ ] Insurance (where insurance company is a party, except arbitration)
- [ ] UCC (includes sales and negotiable instruments)
- [ ] Other Commercial (specify): _____

**NOTE:** For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.

### TORTS

- [ ] Asbestos
- [ ] Environmental (specify): _____
- [ ] Medical, Dental or Podiatric Malpractice
- [ ] Motor Vehicle
- [ ] Products Liability (specify): _____
- [ ] Other Negligence (specify): _____
- [ ] Other Professional Malpractice (specify): _____
- [x] Other Tort (specify): Gender-Motivated Violence Act (GMVA)

### SPECIAL PROCEEDINGS

- [ ] Child-Parent Security Act (specify): [ ] Assisted Reproduction [ ] Surrogacy Agreement
- [ ] CPLR Article 75 - Arbitration     [see **NOTE** in **COMMERCIAL** section]
- [ ] CPLR Article 78 - Proceeding against a Body or Officer
- [ ] Election Law
- [ ] Extreme Risk Protection Order
- [ ] MHL Article 9.60 - Kendra's Law
- [ ] MHL Article 10 - Sex Offender Confinement (specify): [ ] Initial [ ] Review
- [ ] MHL Article 81 (Guardianship)
- [ ] Other Mental Hygiene (specify): _____
- [ ] Other Special Proceeding (specify): _____

### MATRIMONIAL

- [ ] Contested

  **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.

  For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.

### REAL PROPERTY  Specify how many properties the application includes: _____

- [ ] Condemnation
- [ ] Mortgage Foreclosure (specify): [ ] Residential     [ ] Commercial

  Property Address: _____

  **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.

- [ ] Partition

  **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.

- [ ] Tax Certiorari (specify): Section: _____ Block: _____ Lot: _____
- [ ] Tax Foreclosure
- [ ] Other Real Property (specify): _____

### OTHER MATTERS

- [ ] Certificate of Incorporation/Dissolution     [see **NOTE** in **COMMERCIAL** section]
- [ ] Emergency Medical Treatment
- [ ] Habeas Corpus
- [ ] Local Court Appeal
- [ ] Mechanic's Lien
- [ ] Name Change/Sex Designation Change
- [ ] Pistol Permit Revocation Hearing
- [ ] Sale or Finance of Religious/Not-for-Profit Property
- [ ] Other (specify): _____

---

## STATUS OF ACTION OR PROCEEDING     Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | [ ] | [x] | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | [ ] | [x] | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | [ ] | [x] | If yes, judgment date: _____ |

---

## NATURE OF JUDICIAL INTERVENTION     Check one box only and enter additional information where indicated.

- [ ] Infant's Compromise
- [ ] Extreme Risk Protection Order Application
- [ ] Note of Issue/Certificate of Readiness
- [ ] Notice of Medical, Dental or Podiatric Malpractice     Date Issue Joined: _____
- [ ] Notice of Motion     Relief Requested: _____     Return Date: _____
- [ ] Notice of Petition     Relief Requested: _____     Return Date: _____
- [x] Order to Show Cause     Relief Requested: Miscellaneous     Return Date: _____
- [ ] Other Ex Parte Application     Relief Requested: _____
- [ ] Partition Settlement Conference
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Waiver of Court Costs, Fees and Expenses
- [ ] Writ of Habeas Corpus
- [ ] Other (specify): _____

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|

| Un-Rep | Parties<br><br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br><br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br><br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br><br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: JANE DOE 1<br><br>Role(s): Plaintiff/Petitioner | KRISTEN FEDEN, ANAPOL WEISS, 130 N. 18TH STREET, SUITE 1600 , PHILADELPHIA, PA  19103, 215-735-1130, kfeden@anapolweiss.com | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, ALON<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, OREN<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, TAL<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:   02/25/2025                                         KRISTEN M. FEDEN
                                                                           Signature

                5905328                                          KRISTEN M. FEDEN
        Attorney Registration Number                            Print Name

# Exhibit B

# ANAPOLWEISS

Kristen Feden
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA  19103
E: kfeden@anapolweiss.com
P: (215) 790-4559

March 4, 2025

<u>*VIA CERTIFIED EMAIL*</u>
Kings County Office of the Sheriff
345 Adams Street, 5th Floor
Brooklyn, NY 11201

> ***Re:***     ***JANE DOE 1 v. ALON ALEXANDER et al - 152605/2025 - New York County Supreme Court – Serving Court Documents***

To whom it may concern:

Our office represents the plaintiff, Jane Doe, in the above-mentioned lawsuit. Our office needs to serve the following defendants:

- TAL ALEXANDER
  Register Number: 50978-511
  Age: 38
  Race: White
  Sex: Male
  MDC Brooklyn
  80 29TH STREET
  BROOKLYN, NY   11232

- Name: ALON ALEXANDER
  Register Number: 52665-511
  Age: 37
  Race: White
  Sex: Male
  MDC Brooklyn
  80 29TH STREET
  BROOKLYN, NY   11232

One Logan Square, 130 North 18th Street, Suite 1600, Philadelphia, PA 19103
| 8700 East Vista Bonita Dr., Suite 268, Scottsdale, AZ 85255 | 1040 Kings Highway North, Suite 304, Cherry Hill, NJ 08034
toll free: 866.735.2792 | www.anapolweiss.com

- Name: OREN ALEXANDER
  Register Number: 52667-511
  Age: 37
  Race: White
  Sex: Male
  MDC Brooklyn
  80 29TH STREET
  BROOKLYN, NY   11232

Each defendant will be served the following filed documents:
- Summons & Complaint
- Order to Show Cause Signed by Judge
- Affidavit in Support of Proposed Order to Show Cause
- Exhibit A
- Exhibit B
- RJI – Re: Order to Show Cause

Attached to this correspondence are checks made out to the Kings County Office of the Sheriff for service fee of 52$ per defendant. Our office understands that in the event the Sheriff's office is unable to guarantee service, the filing fees are nonrefundable.

If you need additional information, please don't hesitate to contact my paralegal Martin Palomo at 215-790-4559 or mpalomo@anapolweiss.com. Additionally, please forward any supporting documents to him as they may arise.

Sincerely,

Kristen Feden

Kristen Feden Esq.
Anapol Weiss

KGF/mp

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**E-FILED SUMMONS**

-----------------------------------------------------------------------X

JANE DOE 1,

Plaintiff designates New York County as the place of trial.

                    Plaintiff,

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

        v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                 Defendant.

-----------------------------------------------------------------------X

To the above-named Defendant:

You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com

1

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 137 of 293

202-780-3014

TO:    ALON ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

OREN ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

TAL ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

2

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.  For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.  Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.  The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.  The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.    JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.    FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 141 of 293

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.

 

16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 144 of 293

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS News (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC News (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence Protection Law,**

**N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a.  Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b.  From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c.  Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1.  Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

    a.  Medical expenses, past and future;

    b.  Impaired earning capacity;

    c.  Past and future emotional distress and psychological trauma;

    d.  Past and future loss of enjoyment of life;

2.  Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3.  Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4.  Award reasonable attorneys' fees and costs;

5.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By:_____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ]
ALEXANDER

LEXITAS

PRESENT: Hon. ___HON. LESLIE A. STROTH___
J.S.C.

At an IAS Part 12 of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the 3ʳᵈ day of ___March___, 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X

JANE DOE 1,

Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

Defendant(s).

-------------------------------------------------------------------X

Index No.: 152605/2025

**ORDER TO SHOW CAUSE**

Upon reading the Summons with Notice in this action, dated ___Feb 25th___, 2025; the Affidavit of ___JANE DOE 1___ dated February 21, 2024; ~~memorandum of law~~ in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the ~~Plaintiff~~ Defendant SHOW CAUSE at I.A.S. Part 12, Room 328 of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the 8th day of ___May___, 2025, at 11:30 a, or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

**ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-------------------------------------------------------------------X

JANE DOE 1,

                     Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

                     Defendant(s).

-------------------------------------------------------------------X

and it is further

- ~~ORDERED that, pending the hearing of this motion BERFORE THE JUSTICE TO BE~~
ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's

name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all

judgments, orders, decisions, notices to the Court and any other document relating to the action

refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v.

JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and

directing that the County Clerk to enter and record all papers in the action under the title "JANE

~~DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL~~

ALEXANDER".

**ORDERED** that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon _____defendents_____ on or before _____6ᵗʰ____ day of _____March_____, 20 25 .

Opposition due by 4/14/25

**ENTER:**

Dated 5/3/25

SO ORDERED

_____
HON. LESLIE A. STROTH, J.S.C.

Justice of the Supreme Court

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------------------------------------------X

JANE DOE 1,

               Plaintiff,

   -against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

             Defendant(s).

---------------------------------------------------------------------------X

**AFFIRMATION OF
KRISTEN FEDEN
AND ALEXANDRA
WALSH IN
SUPPORT OF
PLAINTIFF'S
ORDER TO SHOW
CAUSE**

Index No.:

**AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF
PLAINTIFF'S ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING
ORDER**

**KRISTEN FEDEN**, attorney duly admitted to practice in the Courts of the State of New York,

**ALEXANDRA WALSH**, *pro hac vice* forthcoming, attorneys for Plaintiff in the within action,

hereby affirm under penalty of perjury as follows:

1. I am fully familiar with the above-captioned matter and the proceedings had herein by

    virtue of the file maintained in our office.

1 of 10

2. This affirmation is submitted in support of Plaintiff's application for an order allowing her to proceed under, and be referred to in all papers, by the pseudonym listed in the caption of this matter.

3. Plaintiff is an adult female who was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter referred to as, "Defendants" or "Alexander Brothers"), at Defendants' apartment in the SoHo neighborhood of Manhattan. Due to the extraordinarily sensitive and intimate nature of the allegations, disclosure of Plaintiff's identity would cause her to suffer significant additional psychological harm, potentially re-traumatize her, and subject her to public scrutiny and stigmatization that survivors of sexual violence should not be forced to endure.

4. As more fully described in Plaintiff's Complaint, Defendants orchestrated, enabled, and directly participated in the sexual assault to varying degrees through a pattern of predatory behavior. The Complaint outlines how the Defendants used their prominent social standing, influence, and resources to lure Plaintiff into a location where she was vulnerable and isolated, creating circumstances designed to facilitate their alleged criminal acts while minimizing the risk of intervention or resistance from the victim. Plaintiff's Complaint is attached hereto as Exhibit "A".

5. Over the course of more than a decade, Defendants sexually preyed upon *dozens* of women,[1] including Plaintiff, through deliberately calculated, planned, and coordinated

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-

sexual assaults, including, but not limited to, administering intoxicating substances to render victims incapacitated and prevent them from effectively resisting; committing acts of vaginal and oral rape; and subjecting victims to sexual assault by multiple perpetrators simultaneously. This pattern of predatory misconduct was designed to exploit vulnerabilities, prevent victims from reporting, and shield Defendants from accountability for their actions.

6. Sadly, Plaintiff is one of many survivors of the Alexander Brothers' reign of sexual terror and she currently seeks damages for the physical, psychological and emotional injuries she sustained as a result of said sexual assault.

7. As such, Plaintiff seeks to prosecute her claims without publicly disclosing her identity as a victim of sexual assault because this matter is of a highly sensitive nature, she has already experienced significant pain, shock, shame and embarrassment due to the impact that the sexual assault caused, it poses the risk of retaliatory harm to her and it is the type of matter that has garnered significant attention.

8. Given the high-profile nature of this case, the significant media attention it has garnered, the Defendants' prominence in the real estate industry, and the sensitive nature of the alleged sexual violence, Plaintiff faces extraordinary risks of further trauma, public stigmatization, professional retaliation, and personal safety concerns should her identity be revealed. The protection of anonymity is essential to Plaintiff's ability to pursue justice while preserving her dignity, privacy, and psychological well-being.

---

00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; Id. at 3; Id. at 2; Id. at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

9. New York courts have consistently protected the privacy interests of individuals in cases involving sexual assault, sexual harassment, and substance use disorders. This judicial recognition reflects the substantial privacy interests at stake in such sensitive proceedings, where public disclosure could result in significant psychological harm and social stigmatization. In alignment with these principles, Civil Rights Law § 50-b explicitly provides a limited right of privacy, permitting plaintiff anonymity "where a substantial privacy interest is involved." *See Doe v. New York Univ.*, 6 Misc. 3d 866, 880 (Sup. Ct. 2004) (citation omitted).

10. In *Doe*, Hon. Carol R. Edmead, J.S.C., definitively articulated New York State's established policy position on pseudonymity in sensitive proceedings, authoritatively stating:

> It has been noted that: Upon approving the above legislation, on July 1, 1991, the New York Governor, Mario M. Cuomo, stated in his Governor's Memorandum, as follows:
>
> *. . . [S]exual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.*
>
> *The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public.* Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor's Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. *Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.*
>
> Media accounts of sexual offenses, including reports of the victim's identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, *it will be an important safeguard for the privacy of sexual offense victims*.

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 160 of 293

*Id.* (citing *Deborah S. v. Diorio*, 153 Misc. 2d 708, 718-719 (Civ. Ct. 1992)) (emphasis added).

11. The Second Circuit has established a comprehensive analytical framework for determining when a plaintiff may proceed under pseudonym. As articulated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), courts must evaluate multiple factors, including: "(1) whether the litigation involves matters that are highly sensitive and of personal nature; (2) whether identification will pose a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether the identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether a plaintiff is particularly vulnerable to possible harms of disclosure . . .; (6) whether a defendant will be prejudiced by allowing a plaintiff to press claims anonymously; (7) whether the plaintiff's identity has thus far been kept confidential; . . ." (internal quotations and citations omitted).

12. A thorough application of these factors to the present case overwhelmingly supports Plaintiff's request to proceed under pseudonym: (1) Plaintiff is a survivor of sexual violence, perpetrated through surreptitiously administered intoxicants—matters of the most intimate and sensitive personal nature recognized by courts as warranting privacy protection; (2) Plaintiff faces substantial risk of retaliation and harm beyond mere embarrassment. Sexual assault survivors routinely face skepticism, victim-blaming, and social ostracism. Public identification would expose Plaintiff to potential harassment, professional retaliation, and severe psychological distress; (3) Defendants sexually preyed on Plaintiff leveraging their substantial wealth, social prominence, and industry connections—resources they still possess—to facilitate their predatory misconduct. Public

disclosure would compound Plaintiff's emotional trauma and potentially impair her professional standing and economic opportunities; (4) As a professional whose career depends on reputation and credibility, Plaintiff is particularly vulnerable to the devastating consequences of public identification in connection with these allegations; (6) Defendants will not be prejudiced nor will they gain anything from Plaintiff's public exposure, because Plaintiff will provide her identity and all other relevant identifying information to Defendants and their attorneys in accord with any Case Management Order, and thus, they will be able to investigate and defend against the claims through the standard means of discovery; (7) Plaintiff's identity has thus far been kept confidential.

13. The compelling weight of these factors strongly favors permitting Plaintiff to proceed under pseudonym, particularly given the extraordinary sensitivity of the allegations and the absence of any demonstrable prejudice to Defendants. *See* Exhibit "B", a true and correct copy of Plaintiff's Affidavit which provides compelling evidence of the severe psychological, professional, and social harms she would suffer if forced to publicly identify herself in this high-profile litigation.

14. Furthermore, in weighing Plaintiff's compelling privacy interests against Defendants' constitutional Due Process rights, this Court can find direct and controlling precedent in the authoritative decision of Justice George J. Silver, who unequivocally held that:

> [T]he right of the public, and the press, to access judicial proceedings is not absolute or unfettered, and involves judicial discretion (Lerner, 124 A.D.3d at 487, *supra*). Moreover, access may still be restricted in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual (*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 [1982]).

*See ARK61 DOE v. Archdiocese of New York*, 2019 N.Y. Misc. LEXIS 6035, *4 (Sup. Ct. 2019).

15. Critically, permitting Plaintiff to proceed under pseudonym will in no way impair the public's legitimate interest in open judicial proceedings. Plaintiff seeks *only* to shield her identity—not to seal court records or conceal the underlying facts of this action. This narrowly tailored request maintains public access to the substance of the allegations while protecting Plaintiff from the severe and lasting harm that would result from public identification. As verified in Plaintiff's Affidavit (attached hereto as Exhibit "B"), this balanced approach preserves both judicial transparency and Plaintiff's essential privacy interests. (Plaintiff's Complaint is attached hereto as Exhibit "A").

16. Justice Silver's decision in *ARK61 DOE*, provides direct guidance on balancing privacy interests against the public's right to information in cases involving private defendants:

> . . . it is axiomatic that plaintiff should be afforded the protection of anonymity. To be sure, the instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. **The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress**. . . .

See *ARK61 DOE*, 2019 N.Y. Misc. LEXIS at *6 (emphasis added).

This judicial recognition is firmly grounded in established precedent, as courts have consistently held that "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

17. The extraordinary media attention this case has already generated compounds the necessity for pseudonymous proceedings. Denying Plaintiff's request would not only subject her to intensified media scrutiny but would also create a profound chilling effect, deterring other survivors of sexual violence from pursuing judicial remedies. Such an outcome directly

contravenes New York's established public policy of encouraging victims to seek redress without fear of public exposure.

18. Accordingly, given New York courts' well-established practice of permitting sexual offense victims to proceed anonymously and the State's explicit policy protecting the confidentiality of sexual assault victims, Plaintiff respectfully requests permission to proceed under the "Jane Doe" pseudonym throughout this litigation.

19. Plaintiff further requests that this Court issue a temporary restraining order prohibiting Defendants from disclosing her name or other identifying personal information to any members of the public. Such an order is not merely appropriate but legally mandated, as N.Y. Civil Rights Law § 50-b explicitly guarantees sexual assault victims the right to protection from personal identification. Denying Plaintiff's request would therefore constitute a direct violation of this statutory protection.

20. No previous application has been made for the relief requested herein.

**WHEREFORE**, it is respectfully requested that Plaintiff's Order to Show Cause be granted in its entirety, together with such other relief as this Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_

**ANAPOL WEISS**
Kristen Feden (5905328) [2]
One Logan Square
130 North 18th Street, Suite 1600

---

[2] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra    Walsh    (*pro    hac    vice*
forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 2080 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_____

**ANAPOL WEISS**
Kristen Feden (5905328) [3]
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra   Walsh   (*pro   hac   vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

---

[3] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

# Exhibit A

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| JANE DOE 1,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

　　　Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.    JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.    FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship. The below depicts the conversation between Alon and Plaintiff's friend.




16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 173 of 293

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g.  Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h.  Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i.  Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

## B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 176 of 293

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

### DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 180 of 293

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

# Exhibit B

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 182 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X

JANE DOE 1,

           Plaintiff,

    -against-

ALEXANDER, et al.

           Defendant(s).

-------------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT
OF PLAINTIFF'S
REQUEST TO PROCEED
AS A PSEUDONYM**

Index No.:

I, the Plaintiff in this matter proceeding under a pseudonym, state as follows:

1. I am a competent adult over 18 years of age able to testify as to personal knowledge.

2. The facts in this declaration are true and correct to the best of my knowledge, information, and belief.

3. I am competent to testify to them if called upon to do so.

4. I was subjected to sexual and physical as more fully described in my Complaint (attached to herein petition as Exhibit "B").

5. All averments contained in the Complaint pertaining to me are true and correct to the best of my knowledge, information, and belief.

6. Unquestionably, this litigation involves matters that are highly sensitive and of a personal nature.

7. I believe that identification of me would cause me great emotional stress, harm, trauma, revictimization, ridicule, retaliation, other emotional harm, and/or embarrassment. I would not want the public, my employers or family to know what happened to me.

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 183 of 293

8. Identification of me could also potentially cause me to reconsider litigation of this matter. I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/21/2025

Signature: ███████████████

Print Name: ███████████████

X-----------------------------------

(Notary seal: PAPA GARDNER, STATE OF NEW YORK, NOTARY PUBLIC, 01GA6914942)



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

## Supreme COURT, COUNTY OF New York

Index No: _____   Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Filed Date |
| | |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

JANE DOE 1

*Plaintiff(s)/Petitioner(s)*

-against-

ALON ALEXANDER, OREN ALEXANDER, TAL ALEXANDER

*Defendant(s)/Respondent(s)*

**NATURE OF ACTION OR PROCEEDING:**   Check only one box and specify where indicated.

**COMMERCIAL**
- [ ] Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- [ ] Contract
- [ ] Insurance (where insurance company is a party, except arbitration)
- [ ] UCC (includes sales and negotiable instruments)
- [ ] Other Commercial *(specify)*: _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.*

**TORTS**
- [ ] Asbestos
- [ ] Environmental *(specify)*: _____
- [ ] Medical, Dental or Podiatric Malpractice
- [ ] Motor Vehicle
- [ ] Products Liability *(specify)*: _____
- [ ] Other Negligence *(specify)*: _____
- [ ] Other Professional Malpractice *(specify)*: _____
- [x] Other Tort *(specify)*: Gender-Motivated Violence Act (GMVA)

**SPECIAL PROCEEDINGS**
- [ ] Child-Parent Security Act *(specify)*: [ ] Assisted Reproduction [ ] Surrogacy Agreement
- [ ] CPLR Article 75 - Arbitration   [see **NOTE** in **COMMERCIAL** section]
- [ ] CPLR Article 78 - Proceeding against a Body or Officer
- [ ] Election Law
- [ ] Extreme Risk Protection Order
- [ ] MHL Article 9.60 - Kendra's Law
- [ ] MHL Article 10 - Sex Offender Confinement *(specify)*: [ ] Initial [ ] Review
- [ ] MHL Article 81 (Guardianship)
- [ ] Other Mental Hygiene *(specify)*: _____
- [ ] Other Special Proceeding *(specify)*: _____

**MATRIMONIAL**
- [ ] Contested

   *NOTE: If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.*

   *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.*

**REAL PROPERTY**   Specify how many properties the application includes: _____
- [ ] Condemnation
- [ ] Mortgage Foreclosure *(specify)*: [ ] Residential   [ ] Commercial

   Property Address: _____

   *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.*

- [ ] Partition

   *NOTE: Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.*

- [ ] Tax Certiorari *(specify)*:   Section: _____ Block: _____ Lot: _____
- [ ] Tax Foreclosure
- [ ] Other Real Property *(specify)*: _____

**OTHER MATTERS**
- [ ] Certificate of Incorporation/Dissolution   [see **NOTE** in **COMMERCIAL** section]
- [ ] Emergency Medical Treatment
- [ ] Habeas Corpus
- [ ] Local Court Appeal
- [ ] Mechanic's Lien
- [ ] Name Change/Sex Designation Change
- [ ] Pistol Permit Revocation Hearing
- [ ] Sale or Finance of Religious/Not-for-Profit Property
- [ ] Other *(specify)*: _____

**STATUS OF ACTION OR PROCEEDING**   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | [ ] | [x] | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | [ ] | [x] | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | [ ] | [x] | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**   Check one box only and enter additional information where indicated.

- [ ] Infant's Compromise
- [ ] Extreme Risk Protection Order Application
- [ ] Note of Issue/Certificate of Readiness
- [ ] Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- [ ] Notice of Motion   Relief Requested: _____   Return Date: _____
- [ ] Notice of Petition   Relief Requested: _____   Return Date: _____
- [x] Order to Show Cause   Relief Requested: Miscellaneous   Return Date: _____
- [ ] Other Ex Parte Application   Relief Requested: _____
- [ ] Partition Settlement Conference
- [ ] Request for Preliminary Conference
- [ ] Residential Mortgage Foreclosure Settlement Conference
- [ ] Waiver of Court Costs, Fees and Expenses
- [ ] Writ of Habeas Corpus
- [ ] Other *(specify)*: _____

1 of 2

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|
| **Un-Rep** | **Parties** List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | **Attorneys and Unrepresented Litigants** For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | **Issue Joined** For each defendant, indicate if issue has been joined. | **Insurance Carriers** For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: JANE DOE 1<br><br>Role(s): Plaintiff/Petitioner | KRISTEN FEDEN, ANAPOL WEISS, 130 N. 18TH STREET, SUITE 1600 , PHILADELPHIA, PA  19103, 215-735-1130, kfeden@anapolweiss.com | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, ALON<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, OREN<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, TAL<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    02/25/2025

KRISTEN M. FEDEN
Signature

5905328
Attorney Registration Number

KRISTEN M. FEDEN
Print Name

*This form was generated by NYSCEF*

2 of 2

Exhibit C

# Transaction Record



| TRACKING NO.: | SHIP DATE: | ESTIMATED SHIPPING CHARGES: |
|---|---|---|
| 772473411069 | Mar 4, 2025 | 25.81 USD |

## From address

**Martin Palomo**
Anapol Weiss
130 N. 18th Street
Suite 1600
19103 PA PHILADELPHIA
US
Phone: 2153832742
asuom@anapolweiss.com

## To address

**Service of Process**
Office of Sheriff
345 Adams Street
5th Floor
11201 NY BROOKLYN
US
Phone: 7187072170

## Package information

| Pieces | Weight | Dimensions (LxWxH) | Carriage value | Package options |
|---|---|---|---|---|
| 1 x | 1.00 lb | | | n/a |

| Packaging type: | Service: | Pickup / drop-off type: |
|---|---|---|
| FedEx Envelope | FedEx Priority Overnight | I have already scheduled a pickup at my location |

## Billing information

| | | | |
|---|---|---|---|
| Bill transportation cost to: | ******535 | P.O. No.: | |
| Bill duties, taxes and fees to: | | Invoice No.: | |
| Your reference: | 25012877497 | Department No.: | |

**Please note:** This transaction record is neither a statement nor an invoice, and does not confirm shipment tendered to FedEx or payment. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

# Exhibit 3

# ANAPOLWEISS

Kristen Feden
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA  19103
E: kfeden@anapolweiss.com
P: (215) 790-4559

March 6, 2025

***Via Email and Certified Mail***
Isabelle A. Kirshner, Esquire,
Brian David Linder Esquire,
Effie Blassberger, Esquire,
Clayman Rosenberg Kirshner & Linder, LLP
305 Madison Avenue, Suite 650,
New York, NY 10165
kirshner@clayro.com
linder@clayro.com
blassberger@clayro.com

> ***Re:***     ***Jane Doe 1 v. Alon Alexander, Oren Alexander, and Tal Alexander – Summons and Complaint and Order to Show Cause in newly filed Casein the Supreme Court of The State Of New York County of New York (152605/2025)***

Dear Counsel,

Please find attached the Summons and Complaint, Order to Show Cause signed by the Judge, Affidavit in Support of the Proposed Order to Show Cause, and the RJI – Re: Order to Show Cause in the matter of *Jane Doe 1 v. Alon Alexander, et al.* referenced above.

I am sending this to you in the event that you intend to represent Alon Alexander and Oren Alexander in this action, as you did in a similar matter docketed at 24-cv-4813 in the Southern District of New York. Please note that service was being attempted directly on Alon Alexander and Oren Alexander in prison, as indicated in the Summons. However, given your prior representation of Alon Alexander and Oren Alexander in related actions, we deemed it prudent to send this to you as a courtesy, notwithstanding that the rules do not require it.

If you intend to represent Alon Alexander and/or Oren Alexander in this matter, kindly enter your appearance at your earliest convenience. If you do not intend to represent him, kindly advise accordingly.

Should you have any questions, please feel free to contact me.

Respectfully Submitted,

_____
Kristen G. Feden, Esq.
Anapol Weiss
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19130

KGF

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 191 of 293

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------X

JANE DOE 1,

                          Plaintiff,

         v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                        Defendant.

------------------------------------------------------------------------X

**E-FILED SUMMONS**

Plaintiff designates New York County as the place of trial.

Venue is based on the county where a substantial part of the events or omissions giving rise to the claim occurred

To the above-named Defendant:

      You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

                                 *Kristen Feden*

                                 **ANAPOL WEISS**
                                 Kristen Feden (5905328)
                                 One Logan Square
                                 130 North 18th Street, Suite 1600
                                 Philadelphia, PA 19103
                                 Telephone: (215) 608-9645
                                 Facsimile: (215) 735-2211
                                 kfeden@anapolweiss.com

                                 Alexandra Walsh (*pro hac vice* forthcoming)
                                 14 Ridge Square, NW, Suite 328
                                 Washington, DC 20016
                                 awalsh@anapolweiss.com

1

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 192 of 293

202-780-3014

TO:    ALON ALEXANDER
       c/o Metropolitan Detention Center
       80 29th Street
       Brooklyn, NY 11232

       OREN ALEXANDER
       c/o Metropolitan Detention Center
       80 29th Street
       Brooklyn, NY 11232

       TAL ALEXANDER
       c/o Metropolitan Detention Center
       80 29th Street
       Brooklyn, NY 11232

2

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

    Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2
COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.    JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.    FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.





16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g. Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h. Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i. Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:   February 25, 2025

By: _Kristen Feden_____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 206 of 293

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

LEXITAS

PRESENT: Hon. _____HON. LESLIE A. STROTH_____
J.S.C.

At an IAS Part 12 of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the 3 day of _____March_____, 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
JANE DOE 1,
                              Plaintiff,

        -against-


ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

                      Defendant(s).

-------------------------------------------------------------------X

Index No.: 152605/2025

**ORDER TO SHOW CAUSE**

Upon reading the Summons with Notice in this action, dated **Feb 25th**, 2025; the Affidavit of ___JANE DOE 1___ dated February 21, 2024; ~~memorandum of law~~ in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the ~~Plaintiff~~ Defendant SHOW CAUSE at I.A.S. Part 12, Room 328 of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the 8th day of _____May_____, 2025, at 11:30 a.m., or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

**ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 209 of 293

COUNTY OF NEW YORK

-----------------------------------------------------------------X

JANE DOE 1,

              Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

              Defendant(s).

-----------------------------------------------------------------X

and it is further

~~ORDERED~~ that, pending the hearing of this motion ~~BERFORE THE JUSTICE TO BE~~

ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's

name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all

judgments, orders, decisions, notices to the Court and any other document relating to the action

refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v.

JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and

directing that the County Clerk to enter and record all papers in the action under the title "JANE

~~DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL~~

3 of 4

INDEX NO. 152605/2025

RECEIVED NYSCEF: 03/04/2025

ALEXANDER".

**ORDERED** that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon _____ defendents _____ on or before ___6th___ day of ___March___, 20 25 .

Opposition due by 4/14/25

ENTER:

Dated 5/3/25

SO ORDERED

HON. LESLIE A. STROTH, J.S.C.

Justice of the Supreme Court

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------------X

| | |
|---|---|
| JANE DOE 1, | **AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE** |
| Plaintiff, | |
| -against- | |
| ALON ALEXANDER, OREN ALEXANDER, AND TAL ALEXANDER, | |
| Defendant(s). | Index No.: |

--------------------------------------------------------------------------X

**AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER**

**KRISTEN FEDEN**, attorney duly admitted to practice in the Courts of the State of New York,

**ALEXANDRA WALSH**, *pro hac vice* forthcoming, attorneys for Plaintiff in the within action,

hereby affirm under penalty of perjury as follows:

1. I am fully familiar with the above-captioned matter and the proceedings had herein by virtue of the file maintained in our office.

2. This affirmation is submitted in support of Plaintiff's application for an order allowing her to proceed under, and be referred to in all papers, by the pseudonym listed in the caption of this matter.

3. Plaintiff is an adult female who was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter referred to as, "Defendants" or "Alexander Brothers"), at Defendants' apartment in the SoHo neighborhood of Manhattan. Due to the extraordinarily sensitive and intimate nature of the allegations, disclosure of Plaintiff's identity would cause her to suffer significant additional psychological harm, potentially re-traumatize her, and subject her to public scrutiny and stigmatization that survivors of sexual violence should not be forced to endure.

4. As more fully described in Plaintiff's Complaint, Defendants orchestrated, enabled, and directly participated in the sexual assault to varying degrees through a pattern of predatory behavior. The Complaint outlines how the Defendants used their prominent social standing, influence, and resources to lure Plaintiff into a location where she was vulnerable and isolated, creating circumstances designed to facilitate their alleged criminal acts while minimizing the risk of intervention or resistance from the victim. Plaintiff's Complaint is attached hereto as Exhibit "A".

5. Over the course of more than a decade, Defendants sexually preyed upon *dozens* of women,[1] including Plaintiff, through deliberately calculated, planned, and coordinated

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-

sexual assaults, including, but not limited to, administering intoxicating substances to render victims incapacitated and prevent them from effectively resisting; committing acts of vaginal and oral rape; and subjecting victims to sexual assault by multiple perpetrators simultaneously. This pattern of predatory misconduct was designed to exploit vulnerabilities, prevent victims from reporting, and shield Defendants from accountability for their actions.

6. Sadly, Plaintiff is one of many survivors of the Alexander Brothers' reign of sexual terror and she currently seeks damages for the physical, psychological and emotional injuries she sustained as a result of said sexual assault.

7. As such, Plaintiff seeks to prosecute her claims without publicly disclosing her identity as a victim of sexual assault because this matter is of a highly sensitive nature, she has already experienced significant pain, shock, shame and embarrassment due to the impact that the sexual assault caused, it poses the risk of retaliatory harm to her and it is the type of matter that has garnered significant attention.

8. Given the high-profile nature of this case, the significant media attention it has garnered, the Defendants' prominence in the real estate industry, and the sensitive nature of the alleged sexual violence, Plaintiff faces extraordinary risks of further trauma, public stigmatization, professional retaliation, and personal safety concerns should her identity be revealed. The protection of anonymity is essential to Plaintiff's ability to pursue justice while preserving her dignity, privacy, and psychological well-being.

---

00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; Id. at 3; Id. at 2; Id. at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 214 of 293

9. New York courts have consistently protected the privacy interests of individuals in cases involving sexual assault, sexual harassment, and substance use disorders. This judicial recognition reflects the substantial privacy interests at stake in such sensitive proceedings, where public disclosure could result in significant psychological harm and social stigmatization. In alignment with these principles, Civil Rights Law § 50-b explicitly provides a limited right of privacy, permitting plaintiff anonymity "where a substantial privacy interest is involved." *See Doe v. New York Univ.*, 6 Misc. 3d 866, 880 (Sup. Ct. 2004) (citation omitted).

10. In *Doe*, Hon. Carol R. Edmead, J.S.C., definitively articulated New York State's established policy position on pseudonymity in sensitive proceedings, authoritatively stating:

> It has been noted that: Upon approving the above legislation, on July 1, 1991, the New York Governor, Mario M. Cuomo, stated in his Governor's Memorandum, as follows:
>
> *. . . [S]exual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.*
>
> *The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public.* Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor's Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. *Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.*
>
> Media accounts of sexual offenses, including reports of the victim's identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, *it will be an important safeguard for the privacy of sexual offense victims.*

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 215 of 293

*Id.* (citing *Deborah S. v. Diorio*, 153 Misc. 2d 708, 718-719 (Civ. Ct. 1992))
(emphasis added).

11. The Second Circuit has established a comprehensive analytical framework for determining when a plaintiff may proceed under pseudonym. As articulated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), courts must evaluate multiple factors, including: "(1) whether the litigation involves matters that are highly sensitive and of personal nature; (2) whether identification will pose a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether the identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether a plaintiff is particularly vulnerable to possible harms of disclosure . . .; (6) whether a defendant will be prejudiced by allowing a plaintiff to press claims anonymously; (7) whether the plaintiff's identity has thus far been kept confidential; . . ." (internal quotations and citations omitted).

12. A thorough application of these factors to the present case overwhelmingly supports Plaintiff's request to proceed under pseudonym: (1) Plaintiff is a survivor of sexual violence, perpetrated through surreptitiously administered intoxicants—matters of the most intimate and sensitive personal nature recognized by courts as warranting privacy protection; (2) Plaintiff faces substantial risk of retaliation and harm beyond mere embarrassment. Sexual assault survivors routinely face skepticism, victim-blaming, and social ostracism. Public identification would expose Plaintiff to potential harassment, professional retaliation, and severe psychological distress; (3) Defendants sexually preyed on Plaintiff leveraging their substantial wealth, social prominence, and industry connections—resources they still possess—to facilitate their predatory misconduct. Public

disclosure would compound Plaintiff's emotional trauma and potentially impair her professional standing and economic opportunities; (4) As a professional whose career depends on reputation and credibility, Plaintiff is particularly vulnerable to the devastating consequences of public identification in connection with these allegations; (6) Defendants will not be prejudiced nor will they gain anything from Plaintiff's public exposure, because Plaintiff will provide her identity and all other relevant identifying information to Defendants and their attorneys in accord with any Case Management Order, and thus, they will be able to investigate and defend against the claims through the standard means of discovery; (7) Plaintiff's identity has thus far been kept confidential.

13. The compelling weight of these factors strongly favors permitting Plaintiff to proceed under pseudonym, particularly given the extraordinary sensitivity of the allegations and the absence of any demonstrable prejudice to Defendants. *See* Exhibit "B", a true and correct copy of Plaintiff's Affidavit which provides compelling evidence of the severe psychological, professional, and social harms she would suffer if forced to publicly identify herself in this high-profile litigation.

14. Furthermore, in weighing Plaintiff's compelling privacy interests against Defendants' constitutional Due Process rights, this Court can find direct and controlling precedent in the authoritative decision of Justice George J. Silver, who unequivocally held that:

> [T]he right of the public, and the press, to access judicial proceedings is not absolute or unfettered, and involves judicial discretion (Lerner, 124 A.D.3d at 487, *supra*). Moreover, access may still be restricted in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual (*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 [1982]).

*See ARK61 DOE v. Archdiocese of New York*, 2019 N.Y. Misc. LEXIS 6035, *4 (Sup. Ct. 2019).

15. Critically, permitting Plaintiff to proceed under pseudonym will in no way impair the public's legitimate interest in open judicial proceedings. Plaintiff seeks *only* to shield her identity—not to seal court records or conceal the underlying facts of this action. This narrowly tailored request maintains public access to the substance of the allegations while protecting Plaintiff from the severe and lasting harm that would result from public identification. As verified in Plaintiff's Affidavit (attached hereto as Exhibit "B"), this balanced approach preserves both judicial transparency and Plaintiff's essential privacy interests. (Plaintiff's Complaint is attached hereto as Exhibit "A").

16. Justice Silver's decision in *ARK61 DOE*, provides direct guidance on balancing privacy interests against the public's right to information in cases involving private defendants:

> . . . it is axiomatic that plaintiff should be afforded the protection of anonymity. To be sure, the instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. **The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress**. . . .

See *ARK61 DOE*, 2019 N.Y. Misc. LEXIS at *6 (emphasis added).

This judicial recognition is firmly grounded in established precedent, as courts have consistently held that "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

17. The extraordinary media attention this case has already generated compounds the necessity for pseudonymous proceedings. Denying Plaintiff's request would not only subject her to intensified media scrutiny but would also create a profound chilling effect, deterring other survivors of sexual violence from pursuing judicial remedies. Such an outcome directly

contravenes New York's established public policy of encouraging victims to seek redress without fear of public exposure.

18. Accordingly, given New York courts' well-established practice of permitting sexual offense victims to proceed anonymously and the State's explicit policy protecting the confidentiality of sexual assault victims, Plaintiff respectfully requests permission to proceed under the "Jane Doe" pseudonym throughout this litigation.

19. Plaintiff further requests that this Court issue a temporary restraining order prohibiting Defendants from disclosing her name or other identifying personal information to any members of the public. Such an order is not merely appropriate but legally mandated, as N.Y. Civil Rights Law § 50-b explicitly guarantees sexual assault victims the right to protection from personal identification. Denying Plaintiff's request would therefore constitute a direct violation of this statutory protection.

20. No previous application has been made for the relief requested herein.

**WHEREFORE**, it is respectfully requested that Plaintiff's Order to Show Cause be granted in its entirety, together with such other relief as this Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_____

**ANAPOL WEISS**
Kristen Feden (5905328) [2]
One Logan Square
130 North 18th Street, Suite 1600

---

[2] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 220 of 293

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 2080 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: February 25, 2025

Respectfully submitted,

By: _Kristen Feden_

**ANAPOL WEISS**
Kristen Feden (5905328) [3]
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

---

[3] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 221 of 293

# Exhibit A

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II. PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III. JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV. FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.




16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 227 of 293

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ]
ALEXANDER

g.  Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h.  Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i.  Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.Times (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.      PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a.  Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b.  From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c.  Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1.  Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

    a.  Medical expenses, past and future;

    b.  Impaired earning capacity;

    c.  Past and future emotional distress and psychological trauma;

    d.  Past and future loss of enjoyment of life;

2.  Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3.  Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4.  Award reasonable attorneys' fees and costs;

5.  For such other and further relief as the Court may deem just and proper.

**DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:    February 25, 2025

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14
COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ]
ALEXANDER

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 236 of 293

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
JANE DOE 1,

             Plaintiff,

    -against-

ALEXANDER, et al.

             Defendant(s).

--------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT**
**OF PLAINTIFF'S**
**REQUEST TO PROCEED**
**AS A PSEUDONYM**

Index No.:

I, the Plaintiff in this matter proceeding under a pseudonym, state as follows:

1. I am a competent adult over 18 years of age able to testify as to personal knowledge.

2. The facts in this declaration are true and correct to the best of my knowledge, information, and belief.

3. I am competent to testify to them if called upon to do so.

4. I was subjected to sexual and physical as more fully described in my Complaint (attached to herein petition as Exhibit "B").

5. All averments contained in the Complaint pertaining to me are true and correct to the best of my knowledge, information, and belief.

6. Unquestionably, this litigation involves matters that are highly sensitive and of a personal nature.

7. I believe that identification of me would cause me great emotional stress, harm, trauma, revictimization, ridicule, retaliation, other emotional harm, and/or embarrassment. I would not want the public, my employers or family to know what happened to me.

8. Identification of me could also potentially cause me to reconsider litigation of this matter. I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/21/2025

Signature: ██████████████████

Print Name: ██████████████████

X-████████████████████████████

FILED: NEW YORK COUNTY CLERK 02/25/2025 08:40 PM
NYSCEF DOC. NO. 6
Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 239 of 293
INDEX NO. 152605/2025
RECEIVED NYSCEF: 02/25/2025



# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

## Supreme COURT, COUNTY OF New York

Index No: _____  Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Filed Date |
| | |

**CAPTION**  Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

JANE DOE 1

*Plaintiff(s)/Petitioner(s)*

-against-

ALON ALEXANDER, OREN ALEXANDER, TAL ALEXANDER

*Defendant(s)/Respondent(s)*

**NATURE OF ACTION OR PROCEEDING:**  Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial (*specify*): _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.*

**TORTS**
- ☐ Asbestos
- ☐ Environmental (*specify*): _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability (*specify*): _____
- ☐ Other Negligence (*specify*): _____
- ☐ Other Professional Malpractice (*specify*): _____
- ☒ Other Tort (*specify*): Gender-Motivated Violence Act (GMVA)

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act (*specify*): ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration    [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement (*specify*): ☐ Initial ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene (*specify*): _____
- ☐ Other Special Proceeding (*specify*): _____

**MATRIMONIAL**
- ☐ Contested

    *NOTE: If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.*

    *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.*

**REAL PROPERTY**  Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure (*specify*): ☐ Residential    ☐ Commercial

    Property Address: _____

    *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.*
- ☐ Partition

    *NOTE: Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.*
- ☐ Tax Certiorari (*specify*): Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property (*specify*): _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution    [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other (*specify*): _____

**STATUS OF ACTION OR PROCEEDING**  Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**  Check one box only and enter additional information where indicated.
- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ☐ Notice of Motion    Relief Requested: _____    Return Date: _____
- ☐ Notice of Petition    Relief Requested: _____    Return Date: _____
- ☒ Order to Show Cause    Relief Requested: Miscellaneous    Return Date: _____
- ☐ Other Ex Parte Application    Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other (*specify*): _____

1 of 2

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 240 of 293

| RELATED CASES | List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | | |
|---|---|---|---|---|
| **Case Title** | **Index/Case Number** | **Court** | **Judge (if assigned)** | **Relationship to instant case** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| PARTIES | | For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**. | | |
|---|---|---|---|---|
| **Un-Rep** | **Parties** <br> List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | **Attorneys and Unrepresented Litigants** <br> For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | **Issue Joined** <br> For each defendant, indicate if issue has been joined. | **Insurance Carriers** <br> For each defendant, indicate insurance carrier, if applicable. |
| ☐ | Name: JANE DOE 1 <br><br> Role(s): Plaintiff/Petitioner | KRISTEN FEDEN, ANAPOL WEISS, 130 N. 18TH STREET, SUITE 1600 , PHILADELPHIA, PA  19103, 215-735-1130, kfeden@anapolweiss.com | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, ALON <br><br> Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, OREN <br><br> Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☒ | Name: ALEXANDER, TAL <br><br> Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |
| ☐ | Name: <br><br> Role(s): | | ☐ YES  ☐ NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    02/25/2025

KRISTEN M. FEDEN
_____
Signature

5905328
_____
Attorney Registration Number

KRISTEN M. FEDEN
_____
Print Name

*This form was generated by NYSCEF*

2 of 2

# Exhibit 4

# ANAPOLWEISS

Kristen Feden
One Logan Square
130 N. 18th Street, Suite 1600
Philadelphia, PA  19103
E: kfeden@anapolweiss.com
P: (215) 790-4559

March 6, 2025

***Via Email and Certified Mail***
Deanna Paul, Esquire,
Milton L. Williams, Esquire,
Walden Macht Haran & Williams, LLP
250 Vesey Street, 27th Floor
New York, NY 10281
dpaul@wmhwlaw.com
mwailliams@wmhwlaw.com

> ***Re:*** ***Jane Doe 1 v. Alon Alexander, Oren Alexander, and Tal Alexander –
> Summons and Complaint and Order to Show Cause in newly filed Casein the
> Supreme Court of The State Of New York County of New York
> (152605/2025)***

Dear Counsel,

Please find attached the Summons and Complaint, Order to Show Cause signed by the Judge, Affidavit in Support of the Proposed Order to Show Cause, and the RJI – Re: Order to Show Cause in the matter of *Jane Doe 1 v. Alon Alexander, et al.* referenced above.

I am sending this to you in the event that you intend to represent Tal Alexander in this action, as you did in a similar matter docketed at 24-cv-4813 in the Southern District of New York. Please note that service was being attempted directly on Tal Alexander in prison, as indicated in the Summons. However, given your prior representation of Tal Alexander in related actions, we deemed it prudent to send this to you as a courtesy, notwithstanding that the rules do not require it.

If you intend to represent Tal Alexander in this matter, kindly enter your appearance at your earliest convenience. If you do not intend to represent him, kindly advise accordingly.

Should you have any questions, please feel free to contact me.

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 243 of 293

Respectfully Submitted,

_____
Kristen G. Feden, Esq.
Anapol Weiss
One Logan Square
130 N. 18th St. Ste. 1600
Philadelphia, PA 19130

KGF

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 244 of 293

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

**E-FILED SUMMONS**

---------------------------------------------------------------------X

JANE DOE 1,

        Plaintiff,

    v.

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

        Defendant.

---------------------------------------------------------------------X

Plaintiff designates New York
County as the place of trial.

Venue is based on the county
where a substantial part of the
events or omissions giving rise
to the claim occurred

To the above-named Defendant:

  You are hereby summoned to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within thirty days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: February 25, 2025

_____
**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com

1

202-780-3014

TO: ALON ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

OREN ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

TAL ALEXANDER
c/o Metropolitan Detention Center
80 29th Street
Brooklyn, NY 11232

2

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

**II.    PARTIES**

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

**III.    JURISDICTION AND VENUE**

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

**IV.    FACTUAL ALLEGATIONS**

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

3

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship. The below depicts the conversation between Alon and Plaintiff's friend.




16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

7

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g.  Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h.  Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i.  Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B. The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.Times (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM) https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V.    PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence Protection Law,

### N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance—by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date: February 25, 2025

By: _Kristen Feden_

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ]
ALEXANDER

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 259 of 293

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

LEXITAS

PRESENT:
Hon. ___HON. LESLIE A. STROTH___
J.S.C.

At an IAS Part _12_ of the Supreme Court of the State of New York, County of New York, held at the Courthouse located at 60 Centre St, New York, NY 10007 on the _3rd_ day of ___March___, 2025.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------X
JANE DOE 1,
                 Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

              Defendant(s).

----------------------------------------------------------------X

Index No.: _152605/2025_

**ORDER TO SHOW CAUSE**

Upon reading the Summons with Notice in this action, dated _Feb 25th_, 2025; the Affidavit of _JANE DOE 1_ dated February 21, 2024; ~~memorandum of law~~ in support of their motion to assign an index number to this matter with the above caption and to grant a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper throughout the litigation,

Let the ~~Plaintiff~~ Defendant SHOW CAUSE at I.A.S. Part _12_, Room _328_ of this Court, to be held at the Courthouse located at 60 Centre St., New York, NY 10007, on the _8th_ day of _May_, 2025, at _11:30 am_, or as soon thereafter as counsel may be heard, why an Order should not be made, directing:

1. Granting a Temporary Restraining Order, pursuant to CPLR Section 6301 and N.Y. Civ. Rights 50-b, deeming Plaintiff's use of the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER" to be proper; and,

2. Permitting Plaintiff to proceed in this action under the pseudonym "JANE DOE 1" and the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

3. Directing the parties, their attorneys and agents refrain from publishing the Plaintiff's true identity; and,

4. Directing that all papers and any exhibits and/or attachments thereto filed in this action, and all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER"; and,

5. Granting such other relief as the Court may deem just and proper.

**ORDERED** that, pending the hearing of this motion BEFORE THE JUSTICE TO BE ASSIGNED, the Clerk of this Court, upon payment of the proper fees, be an is hereby directed to assign an index number to this proceeding, and to accept for filing a Request for Judicial Intervention ("RJI") bearing the following caption, namely:

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

-------------------------------------------------------------------X

JANE DOE 1,

                      Plaintiff,

-against-

ALON ALEXANDER, OREN ALEXANDER, AND

TAL ALEXANDER,

                      Defendant(s).

-------------------------------------------------------------------X

and it is further

~~ORDERED~~ that, pending the hearing of this motion ~~BERFORE THE JUSTICE TO BE~~ ASSIGNED, the Clerk of the Court is directed to restrict access to this filing with the Plaintiff's name, and all papers and any exhibits and/or attachments thereto filed in this action, and that all judgments, orders, decisions, notices to the Court and any other document relating to the action refer to Plaintiff by the pseudonym "JANE DOE 1," and bear the caption "JANE DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER", and directing that the County Clerk to enter and record all papers in the action under the title "JANE ~~DOE 1 v. JANE DOE 1 v. ALON ALEXANDER, OREN ALEXANDER, and TAL~~

ALEXANDER".

**ORDERED** that, personal service of a copy of this Order to Show Cause together with the papers upon which it is based and the Summons and Complaint be served upon _____defenders_____ on or before _____6th_____ day of _____March_____, 20 25 .

Opposition due by 4/14/25

ENTER:

Dated 3/3/25

SO ORDERED

HON. LESLIE A. STROTH, J.S.C.

Justice of the Supreme Court

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------X

JANE DOE 1,

                 Plaintiff,

   -against-

ALON ALEXANDER, OREN ALEXANDER, AND
TAL ALEXANDER,

             Defendant(s).

-------------------------------------------------------------------------X

**AFFIRMATION OF
KRISTEN FEDEN
AND ALEXANDRA
WALSH IN
SUPPORT OF
PLAINTIFF'S
ORDER TO SHOW
CAUSE**

Index No.:

**AFFIRMATION OF KRISTEN FEDEN AND ALEXANDRA WALSH IN SUPPORT OF
PLAINTIFF'S ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINING
ORDER**

**KRISTEN FEDEN**, attorney duly admitted to practice in the Courts of the State of New York,

**ALEXANDRA WALSH**, *pro hac vice* forthcoming, attorneys for Plaintiff in the within action,

hereby affirm under penalty of perjury as follows:

1. I am fully familiar with the above-captioned matter and the proceedings had herein by

    virtue of the file maintained in our office.

2. This affirmation is submitted in support of Plaintiff's application for an order allowing her to proceed under, and be referred to in all papers, by the pseudonym listed in the caption of this matter.

3. Plaintiff is an adult female who was sexually assaulted by Defendants Alon, Oren, and Tal Alexander (hereinafter referred to as, "Defendants" or "Alexander Brothers"), at Defendants' apartment in the SoHo neighborhood of Manhattan. Due to the extraordinarily sensitive and intimate nature of the allegations, disclosure of Plaintiff's identity would cause her to suffer significant additional psychological harm, potentially re-traumatize her, and subject her to public scrutiny and stigmatization that survivors of sexual violence should not be forced to endure.

4. As more fully described in Plaintiff's Complaint, Defendants orchestrated, enabled, and directly participated in the sexual assault to varying degrees through a pattern of predatory behavior. The Complaint outlines how the Defendants used their prominent social standing, influence, and resources to lure Plaintiff into a location where she was vulnerable and isolated, creating circumstances designed to facilitate their alleged criminal acts while minimizing the risk of intervention or resistance from the victim. Plaintiff's Complaint is attached hereto as Exhibit "A".

5. Over the course of more than a decade, Defendants sexually preyed upon **dozens** of women,[1] including Plaintiff, through deliberately calculated, planned, and coordinated

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024), https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex; Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y. TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html; Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM), https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/; Exhibit A - Docket and Summons & Complaint from Originating Court, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1; Superseding Indictment at 5, *U.S. v. Alexander et al.*, 1:24-cr-

sexual assaults, including, but not limited to, administering intoxicating substances to render victims incapacitated and prevent them from effectively resisting; committing acts of vaginal and oral rape; and subjecting victims to sexual assault by multiple perpetrators simultaneously. This pattern of predatory misconduct was designed to exploit vulnerabilities, prevent victims from reporting, and shield Defendants from accountability for their actions.

6. Sadly, Plaintiff is one of many survivors of the Alexander Brothers' reign of sexual terror and she currently seeks damages for the physical, psychological and emotional injuries she sustained as a result of said sexual assault.

7. As such, Plaintiff seeks to prosecute her claims without publicly disclosing her identity as a victim of sexual assault because this matter is of a highly sensitive nature, she has already experienced significant pain, shock, shame and embarrassment due to the impact that the sexual assault caused, it poses the risk of retaliatory harm to her and it is the type of matter that has garnered significant attention.

8. Given the high-profile nature of this case, the significant media attention it has garnered, the Defendants' prominence in the real estate industry, and the sensitive nature of the alleged sexual violence, Plaintiff faces extraordinary risks of further trauma, public stigmatization, professional retaliation, and personal safety concerns should her identity be revealed. The protection of anonymity is essential to Plaintiff's ability to pursue justice while preserving her dignity, privacy, and psychological well-being.

---

00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3; Id. at 3; Id. at 2; Id. at 2-3; Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/; Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 267 of 293

9. New York courts have consistently protected the privacy interests of individuals in cases involving sexual assault, sexual harassment, and substance use disorders. This judicial recognition reflects the substantial privacy interests at stake in such sensitive proceedings, where public disclosure could result in significant psychological harm and social stigmatization. In alignment with these principles, Civil Rights Law § 50-b explicitly provides a limited right of privacy, permitting plaintiff anonymity "where a substantial privacy interest is involved." *See Doe v. New York Univ.*, 6 Misc. 3d 866, 880 (Sup. Ct. 2004) (citation omitted).

10. In *Doe*, Hon. Carol R. Edmead, J.S.C., definitively articulated New York State's established policy position on pseudonymity in sensitive proceedings, authoritatively stating:

> It has been noted that: Upon approving the above legislation, on July 1, 1991, the New York Governor, Mario M. Cuomo, stated in his Governor's Memorandum, as follows:
>
> *. . . [S]exual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy. All too often identifying the victim results in a public recounting of the details of the crime.*
>
> *The release of such identifying information does not serve the interest of justice. Indeed, it does a gross disservice to both the victim and the public.* Concerns pertaining to privacy sometimes result in a victim failing to report a sexual offense. In its final report, the Governor's Task Force on Rape and Sexual Assault documented that sexual offenses are vastly underreported. *Undoubtedly, there is even less incentive for a victim to report the sexual assault if his or her identity may become public.*
>
> Media accounts of sexual offenses, including reports of the victim's identity, are not affected by the bill as the new right of action only attaches to violations of section 50-b which, by its terms, applies solely to public officials. While this bill is not designed to have an effect on the media, *it will be an important safeguard for the privacy of sexual offense victims*.

*Id.* (citing *Deborah S. v. Diorio*, 153 Misc. 2d 708, 718-719 (Civ. Ct. 1992)) (emphasis added).

11. The Second Circuit has established a comprehensive analytical framework for determining when a plaintiff may proceed under pseudonym. As articulated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), courts must evaluate multiple factors, including: "(1) whether the litigation involves matters that are highly sensitive and of personal nature; (2) whether identification will pose a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether the identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether a plaintiff is particularly vulnerable to possible harms of disclosure . . .; (6) whether a defendant will be prejudiced by allowing a plaintiff to press claims anonymously; (7) whether the plaintiff's identity has thus far been kept confidential; . . ." (internal quotations and citations omitted).

12. A thorough application of these factors to the present case overwhelmingly supports Plaintiff's request to proceed under pseudonym: (1) Plaintiff is a survivor of sexual violence, perpetrated through surreptitiously administered intoxicants—matters of the most intimate and sensitive personal nature recognized by courts as warranting privacy protection; (2) Plaintiff faces substantial risk of retaliation and harm beyond mere embarrassment. Sexual assault survivors routinely face skepticism, victim-blaming, and social ostracism. Public identification would expose Plaintiff to potential harassment, professional retaliation, and severe psychological distress; (3) Defendants sexually preyed on Plaintiff leveraging their substantial wealth, social prominence, and industry connections—resources they still possess—to facilitate their predatory misconduct. Public

disclosure would compound Plaintiff's emotional trauma and potentially impair her professional standing and economic opportunities; (4) As a professional whose career depends on reputation and credibility, Plaintiff is particularly vulnerable to the devastating consequences of public identification in connection with these allegations; (6) Defendants will not be prejudiced nor will they gain anything from Plaintiff's public exposure, because Plaintiff will provide her identity and all other relevant identifying information to Defendants and their attorneys in accord with any Case Management Order, and thus, they will be able to investigate and defend against the claims through the standard means of discovery; (7) Plaintiff's identity has thus far been kept confidential.

13. The compelling weight of these factors strongly favors permitting Plaintiff to proceed under pseudonym, particularly given the extraordinary sensitivity of the allegations and the absence of any demonstrable prejudice to Defendants. *See* Exhibit "B", a true and correct copy of Plaintiff's Affidavit which provides compelling evidence of the severe psychological, professional, and social harms she would suffer if forced to publicly identify herself in this high-profile litigation.

14. Furthermore, in weighing Plaintiff's compelling privacy interests against Defendants' constitutional Due Process rights, this Court can find direct and controlling precedent in the authoritative decision of Justice George J. Silver, who unequivocally held that:

> [T]he right of the public, and the press, to access judicial proceedings is not absolute or unfettered, and involves judicial discretion (Lerner, 124 A.D.3d at 487, *supra*). Moreover, access may still be restricted in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual (*Globe Newspapers Co. v. Superior Ct.*, 457 U.S. 596, 606 [1982]).

*See ARK61 DOE v. Archdiocese of New York*, 2019 N.Y. Misc. LEXIS 6035, *4 (Sup. Ct. 2019).

15. Critically, permitting Plaintiff to proceed under pseudonym will in no way impair the public's legitimate interest in open judicial proceedings. Plaintiff seeks *only* to shield her identity—not to seal court records or conceal the underlying facts of this action. This narrowly tailored request maintains public access to the substance of the allegations while protecting Plaintiff from the severe and lasting harm that would result from public identification. As verified in Plaintiff's Affidavit (attached hereto as Exhibit "B"), this balanced approach preserves both judicial transparency and Plaintiff's essential privacy interests. (Plaintiff's Complaint is attached hereto as Exhibit "A").

16. Justice Silver's decision in *ARK61 DOE*, provides direct guidance on balancing privacy interests against the public's right to information in cases involving private defendants:

> . . . it is axiomatic that plaintiff should be afforded the protection of anonymity. To be sure, the instant case involves alleged acts that will no doubt center on information about plaintiff of a sensitive and highly personal nature. **The court recognizes that plaintiff, as the alleged victim of sexual abuse, has undoubtedly suffered great emotional distress**. . . .

See *ARK61 DOE*, 2019 N.Y. Misc. LEXIS at *6 (emphasis added).

This judicial recognition is firmly grounded in established precedent, as courts have consistently held that "[t]he risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520, at *4 (S.D.N.Y. Mar. 31, 2019).

17. The extraordinary media attention this case has already generated compounds the necessity for pseudonymous proceedings. Denying Plaintiff's request would not only subject her to intensified media scrutiny but would also create a profound chilling effect, deterring other survivors of sexual violence from pursuing judicial remedies. Such an outcome directly

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 271 of 293

contravenes New York's established public policy of encouraging victims to seek redress without fear of public exposure.

18. Accordingly, given New York courts' well-established practice of permitting sexual offense victims to proceed anonymously and the State's explicit policy protecting the confidentiality of sexual assault victims, Plaintiff respectfully requests permission to proceed under the "Jane Doe" pseudonym throughout this litigation.

19. Plaintiff further requests that this Court issue a temporary restraining order prohibiting Defendants from disclosing her name or other identifying personal information to any members of the public. Such an order is not merely appropriate but legally mandated, as N.Y. Civil Rights Law § 50-b explicitly guarantees sexual assault victims the right to protection from personal identification. Denying Plaintiff's request would therefore constitute a direct violation of this statutory protection.

20. No previous application has been made for the relief requested herein.

**WHEREFORE**, it is respectfully requested that Plaintiff's Order to Show Cause be granted in its entirety, together with such other relief as this Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328) [2]
One Logan Square
130 North 18th Street, Suite 1600

---

[2] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

Case 2:25-cv-02113-JMF    Document 1-1    Filed 03/14/25    Page 273 of 293

The foregoing affirmation in support, exclusive of the caption, signature block, and if any, table of contents and table of authorities, is 2080 words and complies with the limit specified by the Uniform Civil Rules for the Supreme Court and County Court § 202.8-b.

Dated: February 25, 2025

Respectfully submitted,

By:_____

**ANAPOL WEISS**
Kristen Feden (5905328) [3]
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

---

[3] Under the NYSCEF Rules, the act of filing a document by a registered e–filer by means of that filer's User ID and Password constitutes "signing" where the e–filer is a signatory of that document and/or for the purposes of Part 130.

Case 2:25-cv-02113-JMF Document 1-1 Filed 03/14/25 Page 274 of 293

# Exhibit A

KRISTEN GIBBONS FEDEN
5095328
kfeden@anapolweiss.com
**ANAPOL WEISS**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

ALEXANDRA M. WALSH (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

*Counsel for Plaintiff*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| JANE DOE 1, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **JURY TRIAL DEMANDED** |
| ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, | |
| Defendants. | |

Plaintiff Jane Doe 1 ("Plaintiff"), brings this action against Alon Alexander ("Alon"), Oren Alexander ("Oren"), and Tal Alexander ("Tal") (collectively, "Defendants" or the "Alexander Brothers"), to recover damages arising from the injuries she suffered because of Defendants' sexual abuse, and alleges as follows:

1

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER

## I.    INTRODUCTION

1.    For over a decade, the Alexander Brothers raped and tormented women with impunity. From the gleaming penthouses of New York and Miami, using their wealth, social connections, and carefully crafted public personas, they engaged in and meticulously concealed a sweeping enterprise of sexual violence. Plaintiff is a survivor of that violence. With this action, she seeks to hold the Alexander Brothers accountable for what they did to her and for their devastating campaign of abuse against dozens of women.

2.    Behind the facade of their successful real estate business, Defendants executed a calculated pattern of predation. They weaponized their social media presence, exploited their connections to celebrities and influencers, and deployed their wealth to create elaborate traps for young women. Their methodology was precise: identify vulnerable targets through social media, orchestrate seemingly innocent meetings, isolate and prey on women in their luxury apartments, employ intoxicants to facilitate their assaults, and then manipulate and scare their victims into silence.

3.    The scale of Defendants' operation is staggering. In announcing federal criminal charges against Defendants on December 11, 2024, U.S. Attorney Damian Williams revealed the horrifying scope: "As alleged in the Indictment, for more than a decade, the Alexander Brothers, alone and together, repeatedly and violently sexually assaulted and raped dozens of female victims. Today, the defendants are charged with multiple sex trafficking offenses. Our investigation is far from over." U.S. Attorney Williams asked more women to come forward, continuing, "If you have been a victim of the alleged sexual violence perpetrated by [Defendants] – or if you know anything about their alleged crimes – we urge you to come forward."[1]

4.    The criminal charges have empowered dozens of women—including Plaintiff—to break their silence. Like many others, Plaintiff was strategically targeted and brutally assaulted in the Defendants' New York penthouse. Her experience bears the hallmarks of their established pattern:

---

[1] Press Release, U.S. Attorney's Office, Southern District of New York, Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses (Dec. 11, 2024) (https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex).

2

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

the use of social media to identify targets, the deployment of drugs to incapacitate victims, and the coordinated participation of multiple brothers in the assault.

5. Accordingly, Plaintiff brings this action to hold Defendants accountable for their violations of the Victims of Gender-Motivated Violence Protection Law, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL"). Their systematic, gender-motivated violence reflects not merely opportunistic criminality, but a deliberate enterprise built on the targeted exploitation and abuse of women.

## II.    PARTIES

6. Plaintiff Jane Doe is a resident of New York State. Given the sensitive nature of this action and the sexual assault allegations contained herein, Plaintiff proceeds under a pseudonym to protect her privacy, and will file the appropriate motion.

7. Defendant Tal Alexander resides in Brooklyn, New York, specifically the Metropolitan Detention Center (MDC) in Brooklyn, New York. Indeed, upon information and belief, prior to incarceration Tal lived in New York.

8. Defendant Alon Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

9. Defendant Oren Alexander resides in Brooklyn, New York, specifically the MDC in Brooklyn, New York.

## III.    JURISDICTION AND VENUE

10. The Court has personal jurisdiction pursuant to Civil Practice Law and Rules ("CPLR") § 301, *inter alia*, because Plaintiff and Defendants reside in New York and the horrific assaults occurred in New York.

11. Venue is proper in this County pursuant to CPLR § 503(a) because a substantial part of the events giving rise to Plaintiff's claims took place in New York County.

## IV.    FACTUAL ALLEGATIONS

**A. Jane Doe Was Systematically Targeted and Suffered a Devastating Sexual Assault by Alon, Tal, and Oren Alexander.**

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

12. In 2016, when Plaintiff was 20 years old, she responded to an Instagram story by Chantel Jeffries—a prominent celebrity Disc Jockey with millions of followers—seeking someone to go on a date in New York City.

13. Plaintiff's friend also responded to an Instagram story by Chantel Jeffries on behalf of Plaintiff.

14. Plaintiff's friend ultimately connected with Alon via Instagram.

15. Plaintiff's friend told Alon that she wanted to set up Plaintiff with a "loyal and family oriented" man for a long-term relationship.  The below depicts the conversation between Alon and Plaintiff's friend.

 

16. Executing his practiced predatory pattern, Alon messaged Plaintiff, from information supplied by her friend, in what would later prove to be a calculated scheme. He struck up a

4

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

conversation with Plaintiff on Instagram before transitioning their communications to text messages, giving Plaintiff a false sense of trust.

17. He strategically invited her to meet him for dinner in Manhattan. Trusting his representations, Plaintiff drove to Manhattan to meet Alon at the specified location.

18. Upon arrival, Plaintiff discovered there was no restaurant at the location —the first of many intentional deceptions. Alon said he was at a bar and invited her to join. Plaintiff told him that she was twenty years old and could not go to a bar. Alon then smoothly redirected Plaintiff to his apartment, located in New York City, New York, under the pretense that they would proceed to dinner afterward.

19. Plaintiff arrived at Alon's penthouse apartment building in New York City, where the building security required Plaintiff's identification and signature before permitting her entry to Defendants' penthouse apartment. Security kept her identification as she went upstairs.

20. Once inside the apartment, Alon immediately presented Plaintiff with a pre-prepared drink—a signature element of Defendants' methodical assault pattern. After consuming only a portion of the drink, Plaintiff began experiencing severe and unusual disorientation far beyond the effects of normal alcohol consumption.

21. Alon then told Plaintiff that he would show her around the Defendants' apartment. During the tour, Alon brought Plaintiff to a bedroom where his brother, Tal, was in bed with a woman watching television.

22. Plaintiff went to introduce herself to Tal with a kiss on the cheek. As she did so, Tal turned his head and forcibly kissed her on the lips.

23. Plaintiff and Alon left Tal and the woman, ultimately coming to rest on a sofa in a bedroom within the apartment. On the sofa, Alon began to kiss and touch Plaintiff.

24. Plaintiff physically resisted Alon's advance, removing his hands from her body.

25. She also told Alon to stop, making clear that she did not want to engage in sexual activity with Alon.

5

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

26. Plaintiff does not remember how she got on the bed but remembers feeling a sense of hopelessness once she was there.

27. On the bed, Alon told Plaintiff that if he could not touch her, she would have to perform oral sex on him.

28. Despite Plaintiff's explicit verbal refusals and physical resistance, Alon grabbed Plaintiff's head to force her to his penis. He physically controlled her head and forced her to perform oral sex on him.

29. While Plaintiff was being forced to perform oral sex on Alon, a third brother—Oren Alexander—approached Plaintiff from behind and began removing her clothes without her consent.

30. Oren then vaginally raped Plaintiff from behind while she was being forced to continue performing oral sex on Alon.

31. Alon and Oren then switched positions and continued to rape her.

32. Throughout the horrific assault, Plaintiff was in an impaired and disoriented state, likely due to an intoxicant in the drink provided by Alon. She experienced freezing, dissociation, and felt helpless to resist or escape during the assault.

33. Defendant Tal's presence in the apartment was no coincidence, but rather part of Defendants' coordinated scheme. During the apartment "tour," Alon deliberately brought Plaintiff to Tal's bedroom, where Tal was positioned with another woman to normalize the presence of multiple men and create an environment of implied sexual activity.

34. Tal's forcible kiss of Plaintiff, turning his head to convert her greeting into unwanted sexual contact, marked the beginning of the Defendants' orchestrated assault. This initial violation served to test Plaintiff's boundaries and gauge her capacity to resist.

35. Throughout Plaintiff's assault by Alon and Oren, Tal remained in the apartment, within earshot of the ongoing attack. Tal's presence in the apartment served multiple roles in Defendants' scheme: it helped establish a false sense of safety through the appearance of a "double date" scenario, provided additional pressure against Plaintiff's resistance, and ensured that she could not escape or seek help from others in the apartment. Tal took no action to intervene or assist her. His

6

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

participation extended beyond mere presence to active facilitation of the assault scheme through his actions and strategic inactions.

36. After sexually violating Plaintiff, Defendants Alon and Oren left her alone in the room, treating the violent assault as if it were insignificant.

37. Plaintiff, in a state of shock and confusion, gathered her clothes and fled the apartment. She got her identification back from the security desk before she left.

38. This pattern of coordinated activity among the Defendants, with each playing specific roles in facilitating horrific sexually violent assaults, is consistent with the Defendants' criminal indictment's allegations of their joint enterprise of sexual violence: using luxury properties as staging grounds, maintaining the presence of multiple brothers to overwhelm victims, and leveraging each other's presence to create an environment of implied consent and intimidation.

39. The sexual assault was substantially motivated by Defendants' animus toward women, as evidenced by Defendants':

    a. Sophisticated and coordinated efforts to lure Plaintiff to the apartment under false pretenses, including the calculated use of a female celebrity's social media platform to create a false sense of security;

    b. Premeditated use of alcohol or other intoxicants to impair and incapacitate Plaintiff, as demonstrated by the pre-prepared drink waiting upon her arrival;

    c. Complete disregard for Plaintiff's explicit verbal refusals and physical resistance, showing their view that women's expressions of non-consent are meaningless;

    d. Coordinated use of physical force and coercion, including forcibly controlling Plaintiff's head and body movements while she was in an impaired state;

    e. Treatment of Plaintiff as a mere object for their sexual gratification rather than a human being, demonstrated by their coordinated "passing" of her between them without any regard for her autonomy or dignity;

    f. Cavalier attitude after the assault, demonstrating their view that violating women is inconsequential;

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

g.  Strategic division of roles during the assault, with each Defendant performing specific actions as part of their coordinated attack;

h.  Exploitation of their wealth, status, and social connections to create an environment where they believed themselves immune from consequences; and

i.  Pattern of targeting young, vulnerable women through social media and mutual connections, showing their deliberate selection of victims they believed they could overpower and silence.

40. As a direct and proximate result of Defendants' actions, Plaintiff has suffered severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the horrific assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

**B.  The Alexander Brothers' Had a Well-Known Penchant for Sexually Assaulting Women.**

41. Unfortunately, Plaintiff is far from the only victim of the Alexander Brothers.

42. For years, Defendants engaged in a similar pattern of schemes, acts, and conduct with different women, many of whom have found the courage to come forward and seek justice.

43. As they "built an image as jet-setting bachelors," Defendants "were quietly earning another reputation: Accusations that they drugged and sexually assaulted women were spreading throughout the world of high-end real estate."[2]

---

[2] Debra Kamin, *These Brothers Were Real Estate Hotshots, And Predators, Some Women Say*, N.Y.TIMES (July 26, 2024), https://www.nytimes.com/2024/07/24/realestate/tal-oren-alexander-sexual-assault.html.

8

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

44. Two brave women—Rebecca Mandel and Kate Whiteman—stood up in March 2024 and filed suit in New York against Alon and Oren, accusing them of assault, battery, and rape.[3] They alleged a similar pattern of behavior against other women.

45. They were correct. A third woman—Angelica Parker—filed a lawsuit in June of 2024, accused all three brothers of rape. She noted in her complaint that thirty more women came forward after news broke of the initial lawsuits against Defendants.[4]

46. Like Plaintiff, Ms. Parker was a victim of a coordinated sexual assault. She was vaginally raped and forcibly orally raped at the same time by Defendants.[5]

47. Upon further investigation, "dozens of former classmates, brokerage employees and agents" have said "that they had knowledge of drugging and violent sexual assault by the brothers, dating back at least twenty years to when the men were high school students."[6]

48. Law enforcement agencies around the country have followed these brave women and filed criminal charges against Defendants.

49. A federal grand jury in the Southern District of New York indicted Alon, Oren, and Tal in December 2024. The U.S. Attorney's Office alleged repeated and violent drugging, assaulting, and raping of dozens of women since at least in or about 2010.[7] The indictment alleged that Defendants used their wealth to lure women to locations where they were forcibly raped them, sometimes by the Defendants and sometimes by multiple other men, and often with the aid of drugs to prevent the women from fighting back.

---

[3] Brooklee Han, *Real estate broker Oren Alexander and brother accused of rape in New York*, HOUSINGWIRE (June 10, 2024, 5:21 PM)  https://www.housingwire.com/articles/real-estate-broker-oren-alexander-and-brother-accused-of-rape-in-new-york/.

[4] Exhibit A - Docket and Summons & Complaint from Originating Court at 4, *Parker v. Alexander et al.*, 1:24-cv-04813-LAK (S.D.N.Y. June 25, 2024), ECF 1-1. Ms. Parker's Complaint was dismissed, but the Court's dismissal is being appealed.

[5] *Id.* at 6-7.

[6] Kamin, *supra* note 2.

[7] Superseding Indictment at 5, U.S. v. Alexander et al., 1:24-cr-00676-UA (S.D.N.Y. Dec. 11, 2024), ECF 3.

9

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

50. The allegations demonstrate Defendants had a history of drugging and assaulting women using a playbook almost identical to what they used on Plaintiff.

51. As outlined in the superseding indictment, Alon, Oren, and Tal "used social connections or the guise of starting a relationship to lure and entice women to meet . . . then sexually assaulted the woman, sometimes within hours of their meeting."[8]

52. Defendants "used deception, fraud, and coercion" to get women "to meet them in private locations."[9] They then "used various methods, including drugging the victims and, at times, physical force, to rape and sexually assault the victims—sometimes alone and sometimes together."[10]

53. Federal prosecutors say that "they've spoken to more than 60 alleged victims of the three men so far,"[11] and have videos of Defendants "engaged in sexual acts with who appear to be under the influence of drugs or alcohol."[12] They plan to bring more charges.[13]

54. State authorities have filed charges too. Oren and Alon face felony sexual battery charges in Miami-Dade for three incidents involving three different women.

55. According to one of the victims, she took a drink from Oren, began to feel "weird," and did not "have the strength" to "push" Oren away as he raped her.[14]

56. Another victim described a harrowing scene. As she was forcibly pinned down, Alon and Oren asked each other, "Do you want to go first? Do you want to go first?" before raping her.[15]

---

[8] *Id.* at 3.

[9] *Id.* at 2.

[10] *Id.* at 2-3.

[11] *Id.*

[12] Alice Gainer, *Alexander brothers will face more charges as 60 women allege rape, prosecutors say*, CBS NEWS (Feb. 7, 2025, 8:22 PM), https://www.cbsnews.com/newyork/news/alexander-brothers-will-face-more-charges/.

[13] *Id.*

[14] Chloe Atkins, *Women detail alleged assaults by real estate star Oren Alexander and his brother*, NBC NEWS (Feb. 6, 2025, 7:23 PM), https://www.nbcnews.com/news/us-news/women-detail-alleged-assaults-real-estate-star-oren-alexander-brother-rcna191110.

[15] *Id.*

10

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

## V. PLAINTIFF'S CLAIMS

### FIRST CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence Protection Law,**

**N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**

57. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

58. This claim is brought against Defendants Alon, Oren, and Tal.

59. As set forth below, Defendants violated the Victims of Gender-Motivated Violence Protection Law (VGMVPL) by "committing a crime of violence motivated by gender."

60. The VGMVPL defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender." Admin. Code § 10-1103(b).

61. Put together, the elements of a violation of the VGMVPA are: (1) the alleged act constituted a misdemeanor or felony against the Plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of Plaintiff's gender; and (4) in part because of animus against Plaintiff's gender. *Id.*

62. Defendants' actions meet the first element of a VGMVPL violation, as their misconduct violates Article 130 of the New York Penal Law:

    a. Alon and Oren violated § 130.35—Rape in the first degree—for "vaginal sexual contact . . . by forcible compulsion" and "oral sexual contact . . . by forcible compulsion." Not only was the rape "by forcible compulsion," but Plaintiff was also "incapable of consent by reason of being physically helpless," given the drink Alon gave her.

    b. From the same facts, Alon and Oren also violated lesser related offenses, including § 130.65, Sexual abuse in the first degree.

    c. Alon also violated § 130.90—Facilitating a sex offense with a controlled substance— by giving Plaintiff a pre-made drink "without [her] consent and with intent to commit .

11

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

. . conduct constituting a felony." The drink left Plaintiff disoriented and unable to physically resist Defendants' sexual assault.

    d. Tal is criminally liable for his brothers' violations of Article 30 because, under § 20.00, he "intentionally aid[ed]" their sexual assault of Plaintiff with full knowledge of their plans to violate her.

63. Defendants' actions presented a serious risk of physical injury. As stated above, the direct and proximate result of Defendants' gender-motivated violence is that Plaintiff has suffered and continues to suffer, severe and ongoing emotional distress, psychological impairment, and economic damages, including but not limited to intrusive memories and flashbacks of the assault, severe anxiety in social situations, difficulty maintaining intimate relationships, sleep disturbances and nightmares, hypervigilance and an exaggerated startle response, as well as panic attacks triggered by environmental stimuli reminiscent of the assault; and will have an ongoing need for psychological treatment and therapy.

64. Defendants' violent acts were motivated by gender as evidenced by Defendants' as outlined herein.

65. Additionally, the Appellate Division First Department has held that where the plaintiff is an alleged victim of rape, an allegation of rape is sufficient to show animus on the basis of gender. *Breest v. Harris*, 180 A.D. 3d 83 (1st Dept. 2019).

66. Plaintiff brings this action under VGMVPL's revival statute, passed by the New York City Council in January 2022, which allows otherwise time-barred claims to be brought until March 1, 2025. Admin. Code § 10-1105(a).

67. Plaintiff seeks compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as the Court deems just and proper under § 10-1104.

68. The Defendants' misconduct was willful, wanton, malicious, and oppressive, and manifested a conscious disregard for Plaintiff's rights and safety, thereby warranting punitive damages under the common law standard for the purpose of punishing and deterring reprehensible conduct. *Chauca v. Abraham*, 30 N.Y.3d 325 (2017).

12

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 287 of 293

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for the above-referenced claims and causes of action, and as follows:

1. Award compensatory damages in an amount to be determined at trial, including but not limited to damages for:

   a. Medical expenses, past and future;

   b. Impaired earning capacity;

   c. Past and future emotional distress and psychological trauma;

   d. Past and future loss of enjoyment of life;

2. Award punitive damages in an amount to be determined at trial sufficient to punish Defendants for their willful and malicious conduct and to deter similar conduct by others;

3. Award prejudgment and post-judgment interest to the fullest extent permitted by law;

4. Award reasonable attorneys' fees and costs;

5. For such other and further relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Date:   February 25, 2025

By: _____

**ANAPOL WEISS**
Kristen Feden (5905328)
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211

13

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

kfeden@anapolweiss.com

Alexandra Walsh (*pro hac vice* forthcoming)
14 Ridge Square, NW, Suite 328
Washington, DC 20016
awalsh@anapolweiss.com
202-780-3014

14

COMPLAINT FOR DAMAGES AGAINST [ ] ALEXANDER AND [ ] ALEXANDER AND [ ] ALEXANDER

Case 2:25-cv-02113-JMF   Document 1-1   Filed 03/14/25   Page 289 of 293

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
JANE DOE 1,

              Plaintiff,

    -against-

ALEXANDER, et al.

              Defendant(s).

-------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT
OF PLAINTIFF'S
REQUEST TO PROCEED
AS A PSEUDONYM**

Index No.:

I, the Plaintiff in this matter proceeding under a pseudonym, state as follows:

1. I am a competent adult over 18 years of age able to testify as to personal knowledge.

2. The facts in this declaration are true and correct to the best of my knowledge, information, and belief.

3. I am competent to testify to them if called upon to do so.

4. I was subjected to sexual and physical as more fully described in my Complaint (attached to herein petition as Exhibit "B").

5. All averments contained in the Complaint pertaining to me are true and correct to the best of my knowledge, information, and belief.

6. Unquestionably, this litigation involves matters that are highly sensitive and of a personal nature.

7. I believe that identification of me would cause me great emotional stress, harm, trauma, revictimization, ridicule, retaliation, other emotional harm, and/or embarrassment. I would not want the public, my employers or family to know what happened to me.

8. Identification of me could also potentially cause me to reconsider litigation of this matter. I declare under penalty of perjury that the foregoing is true and correct.

Date: 2/21/2025

Signature: ███████████████

Print Name: ███████████████

FILED: NEW YORK COUNTY CLERK 03/05/2025 08:40 PM
NYSCEF DOC. NO. 12

INDEX NO. 152605/2025
RECEIVED NYSCEF: 03/05/2025



INDEX NO. 152605/2025

# REQUEST FOR JUDICIAL INTERVENTION

UCS-840
(rev. 12/16/2024)

### Supreme COURT, COUNTY OF New York

Index No: _____  Date Index Issued: _____

| | For Court Use Only: |
|---|---|
| | IAS Entry Date |
| | |
| | Judge Assigned |
| | |
| | RJI Filed Date |
| | |

**CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.

JANE DOE 1

*Plaintiff(s)/Petitioner(s)*

-against-

ALON ALEXANDER, OREN ALEXANDER, TAL ALEXANDER

*Defendant(s)/Respondent(s)*

**NATURE OF ACTION OR PROCEEDING:**   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial *(specify)*: _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ☐ Asbestos
- ☐ Environmental *(specify)*: _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability *(specify)*: _____
- ☐ Other Negligence *(specify)*: _____
- ☐ Other Professional Malpractice *(specify)*: _____
- ☒ Other Tort *(specify)*: Gender-Motivated Violence Act (GMVA)

**MATRIMONIAL**
- ☐ Contested

  *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum (UCS-840M).*

  *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**  Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure *(specify)*: ☐ Residential   ☐ Commercial

  Property Address: _____

  *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ☐ Partition

  *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ☐ Tax Certiorari *(specify)*:  Section: _____  Block: _____  Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property *(specify)*: _____

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act *(specify)*: ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration   [see *NOTE* in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement *(specify)*:  ☐ Initial   ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene *(specify)*: _____
- ☐ Other Special Proceeding *(specify)*: _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see *NOTE* in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other *(specify)*: _____

**STATUS OF ACTION OR PROCEEDING**   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

**NATURE OF JUDICIAL INTERVENTION**   Check one box only and enter additional information where indicated.
- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☐ Notice of Motion   Relief Requested: _____   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☒ Order to Show Cause   Relief Requested: Miscellaneous   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Waiver of Court Costs, Fees and Expenses
- ☐ Writ of Habeas Corpus
- ☐ Other *(specify)*: _____

## RELATED CASES

List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## PARTIES

For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties — List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants — For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined — For each defendant, indicate if issue has been joined. | Insurance Carriers — For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: JANE DOE 1<br><br>Role(s): Plaintiff/Petitioner | KRISTEN FEDEN, ANAPOL WEISS, 130 N. 18TH STREET, SUITE 1600 , PHILADELPHIA, PA  19103, 215-735-1130, kfeden@anapolweiss.com | ☐ YES  ☒ NO |  |
| ☒ | Name: ALEXANDER, ALON<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO |  |
| ☒ | Name: ALEXANDER, OREN<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO |  |
| ☒ | Name: ALEXANDER, TAL<br><br>Role(s): Defendant/Respondent | 80 29th Street, Brooklyn, NY  11232 | ☐ YES  ☒ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    02/25/2025

KRISTEN M. FEDEN
Signature

5905328
Attorney Registration Number

KRISTEN M. FEDEN
Print Name

*This form was generated by NYSCEF*