UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE 1,

                  Plaintiff,

           v.

ALON ALEXANDER, OREN
ALEXANDER, and TAL ALEXANDER,

                Defendants.

Case No.: 25-CV-2113 (JMF)

*Oral Argument Requested*

## **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT TAL ALEXANDER'S MOTION TO DISMISS AND MOTION TO STRIKE CERTAIN PORTIONS OF THE COMPLAINT**

WALDEN MACHT HARAN & WILLIAMS LLP
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030

Milton L. Williams
Daniel A. Cohen
Deanna M. Paul
mwilliams@wmhwlaw.com
dcohen@wmhwlaw.com
dpaul@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................1

I.    THE COURT SHOULD DISMISS PLAINTIFF'S VGMVPL CLAIM ...........................1

    A.    The Complaint Fails to State a Claim ....................................................................1

    B.    The 2022 VGMVPL Amendment Did Not Revive Plaintiff's Time-Barred
         Claim Because State Legislation Preempts the Amendment ..................................2

        1.    New York State Law Occupies the Field ................................................. 3

        2.    The VGMVPL Directly Conflicts with State Law ................................. 7

II.   THE COURT SHOULD STRIKE IRRELEVANT AND PREJUDICIAL
    ALLEGATIONS FROM THE COMPLAINT ...............................................................10

CONCLUSION.................................................................................................................10

## PRELIMINARY STATEMENT

Defendant Tal Alexander's motion showed that Plaintiff's sole claim, asserted New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL"): (1) fails to state a claim, because it does not assert that Defendant committed a "crime of violence"; (2) is time-barred and not subject to revival, because state revival legislation pre-empts rival legislation under the 2022 VGMVPL amendment. Nothing in Plaintiff's opposition alters those results.

Separately, Plaintiff fails to provide a persuasive rationale for including allegations concerning Defendants' conduct vis-à-vis third parties, which merely recycle highly prejudicial, unproven allegations by third parties. Such allegations should be stricken.

## ARGUMENT

### I.    THE COURT SHOULD DISMISS PLAINTIFF'S VGMVPL CLAIM

#### A.    The Complaint Fails to State a Claim

The VGMVPL applies to a party who committed a "crime of violence"—an act that (1) constitutes a misdemeanor or felony, and (2) "presents a serious risk of physical injury." N.Y.C. Admin. Code § 10-1103. The Complaint does not satisfy this requirement.

The Complaint alleges that in 2016, Plaintiff entered Defendant's bedroom and he forcibly kissed her on the lips. (ECF 11-4 ¶¶ 21-22). Plaintiff then left Defendant and went into another bedroom, where the other defendants allegedly raped her; Defendant allegedly was within earshot but did not intervene. (*Id.* ¶¶ 23-31, 35).

These allegations fail to state that Defendant committed a misdemeanor or felony that presented a serious risk of physical injury to Plaintiff, as evidenced by Plaintiff's failure to cite any applicable criminal statute. While Plaintiff sweepingly states that Defendant's presence is "emblematic of a complicity in the violent act" and that he "facilitated the assault," ECF 20 at 18, Plaintiff does not explain how his conduct did so.

More importantly, the operative statute in 2016 created a cause of action against "an individual who *commits* a crime of violence," ECF 14-5; emphasis added—*i.e.*, a perpetrator of a violent act. While the 2022 VGMVPL Amendment broadened liability to "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence," ECF 14-6, the amendment did not provide for retroactive application. Hence, it does not apply here.

New York law has a "deeply rooted presumption against retroactivity … based on [e]lementary considerations of fairness [that] dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly," *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 370 (2020) (internal citations omitted). Thus, "[r]etroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (2023) (internal citation omitted). The VGMVPL contains no such retroactivity-enabling language. As another Court recently held:

> Jane Doe 3 says this expansion applies retroactively. Yet where legislation would impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed, a presumption against retroactivity applies…. Jane Doe 3's only response is that the 2022 amendments also revived time-barred claims. See N.Y.C. Admin Code § 10-1105. Yet reviving a time-barred claim is not the same as making new substantive obligations retroactive…. *Jane Doe 3 has pointed to nothing else to overcome the presumption against retroactivity, so this claim is dismissed*.

*Bensky v. Indyke*, 743 F. Supp. 3d 586, 600 (S.D.N.Y. 2024) (emphasis added). So too, here.

**B.    The 2022 VGMVPL Amendment Did Not Revive Plaintiff's Time-Barred Claim Because State Legislation Preempts the Amendment**

Under the VGPVML's seven-year statute of limitations, Plaintiff's VGPVML claim expired in 2023. Plaintiff therefore seeks to invoke the 2022 VGMVPL Amendment's revival provision. As Defendant previously showed, the New York State Legislature's adoption of the CVA and ASA preempts City legislation concerning the same subject matter, *i.e.*, revival of time-

barred claims arising from sexual offenses under Article 130, both by field preemption and conflict preemption.

### 1.    New York State Law Occupies the Field

The State Legislature can occupy a field expressly (by so stating) or impliedly.  *See DJL Rest. Corp. v. City of New York*, 96 N.Y.2d 91, 95 (2001).  A state legislature's intent to occupy a field to the exclusion of local legislation can be implied from its "enactment of a comprehensive and detailed regulatory scheme in a particular area, or from the nature of the subject matter being regulated and the purpose and scope of the state legislat scheme, including the need for state-wide uniformity in a given area."  *Police Benevolent Ass'n of City of New York, Inc. v. City of New York*, 40 N.Y.3d 417, 423-24 (2023) (internal quotations omitted).[1]  Where the State Legislature enacts such a scheme, a local government cannot "legislat[e] on the same subject matter unless it has received clear and explicit authority to the contrary." *DJL Rest. Corp.,* 96 N.Y.2d at 95 (internal quotations omitted).[2]

As Judge Kaplan held, the CVA and ASA taken together "constitute a comprehensive and detailed regulatory scheme." *Parker v. Alexander*, No. 24-CV-4813 (LAK), 2025 WL 268436, at *2 (S.D.N.Y. Jan. 22, 2025).[3]  Evidence of the State's legislative intent to occupy the field include:

---

[1] *See also DJL Rest. Corp.,* 96 N.Y.2d at 95 (similar); *Ctr. for Indep. of Disabled v. Metro. Transportation Auth.*, 184 A.D.3d 197, 203 (1st Dep't 2020).

[2] *See also Albany Area Builders Ass'n v. Town of Guilderland,* 74 N.Y.2d 372, 377 (1989) ("Where the State has preempted the field, a local law regulating the same subject matter is deemed inconsistent with the State's transcendent interest, whether or not the terms of the local law actually conflict with a State-wide statute."); *Mayor of City of New York v. Council of City of New York,* 4 Misc. 3d 151, 162 (Sup. Ct. 2004) (concluding a local law that addressed "virtually the identical activity regulated by" state law was preempted in its entirety).

[3] An appeal before the Second Circuit is pending in *Parker*.  Plaintiff-Appellant recently filed her initial brief.  *See Parker v. Alexander*, No. 25-487 (2d Cir.).

1.  Both statutes specifically state that their revival provisions apply "[n]otwithstanding *any* provision of law which imposes a period of limitation to the contrary."  CPLR §§ 214-g, 214-j (emphasis added).  Such language aims to preclude further local regulation on the subject.

2. The statutes are comprehensive:  collectively, they cover all potential victims, whether under or over the age of eighteen when the offense occurred, collectively, and revive every conceivable claim arising from conduct constituting a sexual offense under Article 130 of the New York Penal Law.  Because they apply to "every civil claim or cause of action" and apply to "any party alleging intentional or negligent acts," they allow suits not only against direct offenders, but also against a sexual abuser's alleged enablers.  *See J.S.M. v. City of Albany Dep't of Gen. Servs.*, 83 Misc. 3d 1082, at *4-5 (N.Y. Sup. Ct. 2024).[4]

3. Intent to occupy a field can be inferred "from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme, including the need for State-wide uniformity in a given area."[5]  *People v. Diack*, 24 N.Y.3d 674, 679 (2015) (citation omitted).  Because revival is "an extreme exercise of legislative power," the Legislature "act[s] with deliberation and clarity when upsetting the strong public policy favoring finality, predictability,

---

[4] The CVA and ASA apply to approximately 20 crimes that are described in the New York Penal Law's sections on sex crimes (Article 130), including sexual assault, forcible touching, sexual abuse, and rape.  However, nothing in the statutes requires that the cause of action include a sexual offense as a necessary element, so long as a sexual offense is the conduct that caused the alleged injury in this case.  *See, e.g., Doe v. New York City Board of Education*, 669 F. Supp. 3d 160, 165 (E.D.N.Y. 2024) (holding that the plain language of the CVA embraces claims brought under the state and city Human Rights Law); *Segal v. New York Mil. Acad.*, No. 21-CV-6872, 2023 WL 5211220, at *6 (S.D.N.Y. Aug. 14, 2023) (denying a motion to dismiss state law discrimination claims arising under the CVA).

[5] In rejecting constitutional challenges to claim revival statutes, New York courts have underscored the need for uniform state-wide rules. *See Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 515 (1989) ("[T]he Legislature properly determined that it would be more fair for all plaintiffs to uniformly now have one year to bring their actions, rather than for the courts to begin drawing arbitrary lines transecting this area's shades of gray.").

fairness and repose served by statutes of limitation." *Regina Metro. Co., LLC*, 35 N.Y.3d at 371-72 (citations omitted); *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 564-65 (E.D.N.Y. 2021) (discussing length of revival window).

Indeed, before passing the ASA, the State Legislature extended the CVA lookback window from one to two years. It also adopted the ASA four months after the City adopted the 2022 VGMVPL Amendment. The State Legislature could have adopted a carve-out for the VGMVPL expressly (by so stating) or impliedly (by excluding only more restrictive statutes of limitations); it chose not to. *Parker* 2025 WL 268436 at *3.

Further, the CVA and ASA go far beyond claim revival. *E.g.*, the CVA removed the requirement that child sexual abuse claims against municipalities be brought within one year and 90 days, N.Y. Gen. Mun. L. 50-i (5), and created CPLR § 208(b), which extended the infancy tolling of the statute of limitations for certain child sex abuse crimes. CPLR § 208(b). The Legislature established dedicated court parts to adjudicate CVA claims, required special training of judges, and provided trial preference for older abuse victims. *See* 22 NYCRR § 202.72. The ASA also granted trial preference to ASA actions, and directed the courts' Chief Administrator to ensure revived actions were adjudicated in a timely manner.

Plaintiff's arguments fail to rebut this showing of field preemption.

Plaintiff urges the Court to follow *Doe v. Black*, 2024 WL 4335453 (S.D.N.Y. Sept. 27, 2024). Ultimately, the Second Circuit must resolve the conflict between *Black* and *Parker*. A critical difference, however, is that *Black* focused solely on the CVA, and did not address whether the CVA and the ASA, <u>taken together</u>, establish a comprehensive scheme addressing the revival of all time-barred civil claims arising from violations of Article 130. *Parker*, 2025 WL 268436, at *4. *Black* also did not address (i) the <u>conflicting</u> time windows (discussed below); (ii) the plain

language of the CVA and ASA, which expressly apply to <u>all</u> civil claims and causes of action arising from sexual offenses, "[n]otwithstanding <u>any</u> provision of law <u>which imposes a limitation to the contrary</u>"; and (iii) the State Legislature's stated intention to create "a <u>limited</u> window when stale claims may be pursued."   *Id.* (emphasis in original).  Defendant respectfully submits that *Parker* provides the correct analysis.[6]

In a variation of the *Black* decision, Plaintiff argues that the ASA standing alone does not show that the legislature intended to "undermine the City of New York's authority in passing the VGMVPL." ECF 20 at 13-14.  That argument not only ignores the preemptive effect of the ASA and the CVA taken together, but also omits the State's continuing regulation of the revival of claims derived from violations of Article 130 of the New York Penal Law. *See People v. Diack*, 24 N.Y.3d 674, 679-80 (2015) ("[I]t is clear from the State's continuing regulation . . . that its purpose and design is to preempt [] legislation and to occupy the entire field so as to prohibit local governments from doing so.") (internal quotations omitted).  More significantly, it ignores the State's notable refusal to create a carve-out for the VGMVPL when it enacted the ASA.

Finally, Plaintiff asks the Court to consider the affidavit of State Senator Brad Hoylman-Sigal.  However, the affidavit—created (1) more than five years after the CVA's enactment (and more than two years after the ASA's enactment) and (2) for the purpose of the *Black* litigation— is both inadmissible and non-probative. *See Sibley v. KLM-Royal Dutch Airlines (Koninklijke Luchtvaart Maatschappij N.V.)*, 454 F. Supp. 425, 429 n.7 (S.D.N.Y. 1978) ("[T]he Court does

---

[6] Plaintiff also relies upon *Engelman v. Rofe*, 194 A.D.3d 26 (1st Dep't 2021) (*cited in* ECF 13 at 16).  *Engelman*, however, simply does not address the preemption issue.  In *Engelman*, the plaintiff filed a lawsuit in 2018, years <u>before</u> the CVA, ASA, or 2022 VGMVPL Amendment were enacted.  The Court considered only whether the seven-year statute of limitations was preempted by the CPLR limitation period for assault and battery—not whether a revival window created by the 2022 VGMVPL amendment was preempted by comprehensive state revival legislation that both occupies the field and directly conflicts with the amendment, as this case illustrates.

not consider [state senator's] statement, solicited for purposes of this litigation, more than four years after the enactment of the statute, to be persuasive evidence of legislative intent."); *Blanchette v. Conn. Gen. Ins. Corps*., 419 U.S. 102, 132 (1974) ("[P]ostpassage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. Such statements represent only the personal views of these legislators, since the statements were (made) after passage of the Act.") (internal citations and quotations omitted).[7]   Plaintiff wholly ignores the bevy of cases rejecting similar statements—including *Black*, on which Plaintiff otherwise relies.   Indeed, in *Black*, Plaintiff's counsel attempted to introduce the very same affidavit, which the Court struck.   This Court should similarly disregard it.

### 2.    The VGMVPL Directly Conflicts with State Law

Conflict preemption applies where "there is a head-on collision between" state and local law.  *Lansdown Ent. Corp. v. New York City Dep't of Consumer Affs.,* 74 N.Y.2d 761, 764 (1989). A "local law [is] invalid pursuant to the conflict preemption doctrine" if "the State … specifically permits the conduct the local law prohibits or provide[s] 'some other indication that deviation from state law is prohibited.'"   *People v. Torres*, 37 N.Y.3d 256, 268 (2021) (quoting *Garcia v. New York City Dep't of Health & Mental Hygien*e, 31 N.Y.3d 601, 617-18 (2018)).   Here, there is a head-on collision between the state legislation's revival window and the VGMVPL.   For example,

---

[7] *See also Southeastern Comm. Coll. v. Davis*, 442 U.S. 397, 411 n.11 (1979) (post-enactment statements "by individual Members of Congress" … cannot substitute for a clear expression of legislative intent at the time of enactment."); *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995) (statement made "*after* the statute became law" is "not a statement upon which other legislators might have relied in voting for or against the Act, but it simply represents the views of one informed person on an issue about which others may (or may not) have thought differently."); *Cook v. Budget Rent-A-Car Corp*., 502 F. Supp. 494, 499-500 (S.D.N.Y. 1980) (co-sponsor's statement "made six years after the passage of a statute" is not "persuasive legislative history with respect to that statute").

the ASA revival window opened on November 24, 2022.  Yet the 2022 VGMVPL Amendment

allowed for the commencement of claims "not earlier than six months after . . . September 1, 2022,"

*i.e.*, March 1, 2023.  N.Y.C. Admin. Code § 10-1105.

More importantly, the 2022 VGMVPL Amendment permits the revival of sexual offense-

based claims that are expressly *foreclosed* by the ASA and the CVA, and thus directly conflict

with the repose created by the latter statutes.  Under the CVA, claims for child victims "may be

commenced … not later than" August 14, 2021, while under the ASA, claims for adult victims

"may be commenced … not later than" November 22, 2022.  CPLR §§ 214-g (emphasis added),

214-j (emphasis added); *see also* 2019 N.Y. Sess. Laws ch. 11, § 3.  After those periods, no further

claims for injuries arising from alleged offenses under Penal Law Article 130 may be brought.

In direct conflict the 2022 VGMVPL Amendment permitted revival of claims arising from

violation of the same penal statutes, for both child and adult victims, until February 28, 2025.  The

head-on conflict is clear: the City legislation permits revival of a claim for several months after

the revival period created by the State legislation for the same claim has ended.  Further, that head-

on conflict directly removes a right or benefit conferred upon defendants—the right of repose

created by the carefully-crafted State legislation that provided a limited revival period.

Statutes of repose "protect a defendant's right, granted by the legislature, to be free from

liability after a legislatively determined period of time."  *Moreira v. Societe Generale, S.A.*, 125

F. 4th 371, 388 (2d Cir. 2025) (internal punctuation and citations omitted; emphasis in original).

The words included in the State statutes—"may not be brought" and "may be brought not later

than"—are language of repose.  *Id.*

The New York Court of Appeals recognizes this concept.  In *Tanges v. Heidelberg N.A.,*

*Inc.*, 93 N.Y.2d 48 (1999), the Court was asked to determine whether a Connecticut law regulating

when certain statutorily-defined product liability claims could be brought was itself procedural or substantive.  In analyzing the statute, the Court noted that the provision that no such claim "may be brought against any party later than ten years from the date that the party last parted with possession or control of the product" was a "provision[] of repose."  *Id.* at 55 (internal quotation marks and citations omitted; emphasis added).

More recently, in analyzing the nature of the six-month "waiting period" preceding the CVA revival window, the Court stated: "The CVA's six-month waiting period does not embody a period of repose … nor is it designed to protect defendants," but rather was designed "to enable the court system to meet the special issues that the ensuing litigation was likely to generate." *Jones v. Cattaraugus-Little Valley Cent. Sch. Dist.*, No. 107, 2025 WL 554454, at *2 (N.Y. Feb. 20, 2025).  The Court did not have occasion to address the language surrounding when the revival window ends.

As to the latter question, however, the Legislature clearly did enact a "provision of repose" by adopting language of repose—*i.e.*, that a claim "may be commenced … not later than," which is functionally equivalent to *Moreira's* "may be brought not later than."  And that end date clearly was designed to protect defendants from liability after the statutorily determined period, by creating a "limited window when stale claims may be pursued."  *Parker,* 2025 WL 268436, at *4 (internal quotation marks and citations omitted; emphasis in original).  Indeed, the adoption of a limited window with a defined end date is a critical factor in satisfying defendants' due process concerns.  *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 400 (2017) ("in each case, the legislature's revival of the plaintiff's claims for a limited period of time was reasonable in light of that injustice") (emphasis added).  The 2022 VGMVPL Amendment thus directly and impermissibly conflicts with the State legislation.

9

## II.    THE COURT SHOULD STRIKE IRRELEVANT AND PREJUDICIAL ALLEGATIONS FROM THE COMPLAINT

Defendant's motion identified highly prejudicial allegations in the Complaint that are calculated to inflame the reader.  Because these allegations do not describe Defendant's alleged conduct vis-à-vis-Plaintiff, they "have no real bearing" on whether Defendant committed a crime of violence against Plaintiff.  *G-1 Holding, Inc. v. Baron & Budd*, 238 F. Supp. 3d 521, 555 (S.D.N.Y. 2002); *see also Ganieva v. Black,* 216 A.D.3d 424, 425 (1st Dep't 2023) (holding that the court should have granted defendant's motion to strike inflammatory factual allegations that detailed misconduct toward other women because they "were scandalous and prejudicial, and not necessary to establish any element of plaintiff's" VGMVPL claim); *Breest v. Haggis*, 180 A.D.3d 83, 95 (1st Dep't 2019) (striking from the complaint allegations that other women had accused defendant of sexual violence because they "tend to prejudice defendant" and "are not necessary to prove animus" in alleged sexual assault or rape cases under the VGMVPL).

Plaintiff argues that such allegations may be relevant and admissible at trial.  ECF 20 at 19-20.  However, "whether the jury should be made aware of [allegations in] indictments" is "a matter more suited to being decided by a Judge during trial." *Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691, at *16 (S.D.N.Y. Feb. 7, 1995); *G-1 Holding, Inc.*, 238 F. Supp. at 555.  Because the references fundamentally present as fact what are essentially unproven criminal charges, they should be stricken.  *Toto*, 1995 WL 46691 at * 17.

## CONCLUSION

Defendant respectfully requests that this Court grant his motion and dismiss or, alternatively, grant his motion to strike.

Dated:  New York, New York       Respectfully submitted,
        April 25, 2025

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: _____

Milton L. Williams
Daniel A. Cohen
Deanna M. Paul
250 Vesey Street, 27th Floor
New York, New York 10281
Tel: (212) 335-2963
mwilliams@wmhwlaw.com
dcohen@wmhwlaw.com
dpaul@wmhwlaw.com

*Attorneys for Defendant Tal Alexander*

11

## <u>CERTIFICATE OF WORD COUNT COMPLIANCE</u>

The undersigned counsel of record for Defendant Tal Alexander certifies that the foregoing brief complies with the 3,500-word limit set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.  The foregoing brief contains 3,419 words, excluding those portions of the brief excluded from the count by Rule 7.1(c), according to the Word Count feature on Microsoft Word.


Dated:  New York, New York
         April 25, 2025

Milton L. Williams